Argued October 19, peremptory writ allowed December 14, 1920.

## LADD & TILTON BANK v. FRAWLEY, COUNTY TREASURER.

. (193 Pac. 916.)

**Constitutional Law—Constitution "Self-executing" When Intended to Go into Immediate Effect.**

1. A constitutional provision is "self-executing," when there is manifest intention that it should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of the right given or the enforcement of a duty imposed, even though such

right may be better or further protected by supplementary legislation.

### Constitutional Law—Constitutional Amendment Increasing Limit for Road Debt is Self-executing.

2.   The amendment to Article XI, Section 10, of the Constitution, adopted in 1919, whereby the limit of indebtedness which a county could incur with approval of its electors was increased from 2 per cent to 6 per cent of its assessed valuation, was self-executing, though it was worded as a restriction on the power of the counties to incur indebtedness greater than 6 per cent, especially in view of the argument in the voters' pamphlet that the amendment gave the counties such power, and the fact that the legislature in submitting a later similar amendment apparently regarded the provision as self-executing.

### Constitutional Law—Statutes Inconsistent With Amendment are Void.

3.   Even though a constitutional amendment is not self-executing as to all its provisions, it is self-executing to the extent that it nullifies all existing statutes or portions thereof which are inconsistent with its provisions, as well as such statutes as may be subsequently passed.

### Counties—Legislative Restriction on Bonded Debt Limit Repealed by Constitutional Amendment.

4.   The provision of Laws of 1913, Chapter 103, Section 19, that no bonded indebtedness issued under the act should exceed 2 per cent of the assessed valuation of the county, was merely to call attention to the then existing limit prescribed by the Constitution, not to fix a separate limit by legislation, since the whole act clearly indicates that it was intended to provide a mode for the issuance of bonds by the counties, and that provision was repealed impliedly by the amendment to Article XI, Section 10, of the Constitution, in 1919, which increased the limit from 2 per cent to 6 per cent.

### Constitutional Law—Curative Amendment not Construed as Dependent on Legislation.

5.   A constitutional amendment designed to cure a defect in the law or to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will.

### Counties—Statute for Election on Bond Issue Repealed by Constitutional Amendment Only as to Limit of Indebtedness.

6.   Since a statute is impliedly repealed by a subsequent statute or constitutional provision only to the extent that it is clearly repugnant thereto, Laws of 1913, Chapter 103, providing for the method of election in counties for the issuance of bonds, was repealed by the amendment in 1919 to Article XI, Section 10, of the Constitution, increasing the limit of indebtedness which counties might incur only to the extent that the statute prescribed such limit, and bonds could therefore be issued to the amount limited by the amendment after proceedings in conformity with the other provisions of that statute.

Original proceeding in Supreme Court in *mandamus*.

In Banc.

This is an original proceeding in *mandamus*. An alternative writ has been issued herein, and return thereto made by the defendant, from which it appears as follows:

On October 11, 1919, at a special election called and held in Union County, Oregon, there was submitted to the voters of the county the question of the issuance of bonds in the sum of $1,498,000 by Union County for the purpose of raising money to be used for the construction and maintenance of permanent roads in the county; the bonds being in a sum not in excess of 6 per cent of the assessed valuation of the property in the county. The incurring of the proposed indebtedness was at such election approved by a majority of those voting on the question, there being 2,184 votes cast in favor of the bonds and 841 against the same. The indebtedness of the county, exclusive of that incurred by such bonds, was nothing. All of the proceedings for calling and holding such election, which were detailed in the return to the writ, were in regular form as prescribed by the statute.

On June 19, 1920, the County Court of Union County sold and delivered to the Union Bridge Company and to the Road Builders' Equipment Company, both of Portland, Oregon, $60,000 par value of bonds so authorized at a price of not less than par and accrued interest, the bonds maturing in numerical order at the rate of $30,000 on the fifteenth day of January, in each of the years 1925 and 1926, and bearing interest at the rate of 5½ per cent per annum, payable semi-annually on the fifteenth day of January

and July of each year, principal and interest payable at the fiscal agency of the State of Oregon in New York City. Thereafter on the fifteenth day of July, 1920, interest coupon No. 1 on the bonds sold became due and payable, and under the provisions of Chapter 46, General Laws of Oregon 1911, the defendant, as treasurer of said county, was required to remit to the fiscal agency in the form of check or draft, payable in New York, at least fifteen days before the maturity of said coupons, sufficient funds for the redemption thereof, which remittance the county treasurer failed, neglected, and refused to make, and still declines and refuses so to do.

On or about July 2, 1920, Ladd & Tilton Bank purchased $10,000 par value of the aforementioned bonds with all coupons attached thereto, including the coupon maturing July 15, 1920, and thereafter presented to the fiscal agency for payment coupons numbered 1 in the aggregate sum of $137.50, which coupons the fiscal agency refused to pay, and still refuses to pay, upon the ground that the county treasurer has not transmitted the funds for payment thereof. It is alleged in the writ that the bonds were issued and sold and the proceeds thereof appropriated by Union County to its proper purposes, and petitioner herein and others similarly situated are *bona fide* and innocent purchasers for value before maturity and without notice.

The return to the writ, after setting forth in detail the proceedings for calling and holding the bond election and the result, the assessed valuation of the property in the county and the sale of the bonds mentioned, states the reason why the defendant has not paid the interest on the bonds thus: Under the provisions of Section 19, Chapter 103, General Laws of

Oregon 1913, page 175, the amount of bonds issued by any county may not exceed 2 per centum of the total assessed valuation of the property of the county, and that the issue of such bonds in the sum of $1,498,000 by Union County was in excess of the 2 per cent limitation and for approximately 6 per centum of the total assessed valuation of the property in the county and therefore void. The constitutional amendment submitted to the people by the legislature and adopted at a special general election held on June 3, 1919, amending Section 10, Article XI, of the Constitution of Oregon and allowing counties to bond themselves to the extent of 6 per centum of their assessed property valuation, has not been made effective for bonding purposes either by the legislature or the people of Oregon. The return also refers to the opinion in the case of *Hawley* v. *Anderson,* 99 Or. — (190 Pac. 1097). A demurrer is interposed to the answer and return to the writ.

It is but fair to say that the officers of Union County and of the other counties interested are anxious and willing to uphold the bonds issued, if the law will permit. Counsel for several counties have joined in the briefs.          PEREMPTORY WRIT ALLOWED.

For petitioner there was a brief over the names of *Mr. Prescott W. Cookingham* and *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Cookingham* and *Mr. Wirt Minor.*

For Yamhill County there was a brief and an oral argument by *Mr. Roswell L. Conner,* District Attorney.

For Coos County there was a brief submitted over the name of *Mr. John F. Hall,* District Attorney.

For Crook County there was a brief over the names of *Mr. N. G. Wallace* and *Mr. Willard H. Wirtz,* District Attorney, with an oral argument by *Mr. Wallace.*

For Lane County there was a brief and an oral argument by *Mr. L. E. Bean.*

For Jackson County there was a brief submitted over the name of *Mr. G. M. Roberts,* District Attorney.

For Union County there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For the Oregon Highway Commission there was a brief and an oral argument by *Mr. J. M. Devers,* Assistant Attorney General.

There was a brief and an oral argument by *Mr. O. D. Eby, Amicus Curiae.*

For the defendant, there was a brief and an oral argument by *Mr. John S. Hodgin,* District Attorney of Union County.

BEAN, J.—No question is raised in regard to the regularity of the proceedings had in the issuance of the bonds. The questions for determination are: (1) Was the amendment to Section 10, Article XI, of the Constitution, in 1919, raising the debt limitation of counties for building and maintaining permanent roads to 6 per cent of the assessable value of the property in the counties, in effect when the bonds in question were issued? This involves two questions: (a) Was the amendment self-executing? and (b) If

not, was there any law then upon the statute books putting the amendment into execution?  (2) Did the amendment of 1919 to Section 10, Article XI, of the Constitution, amend or repeal Section 19 of Chapter 103, of the Laws of 1913, by necessary implication?

Section 10, Article XI, of the Constitution, as originally adopted in 1859, reads as follows:

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion; but the debts of any county at the time this constitution takes effect shall be disregarded in estimating the sum to which such county is limited."

The original Section 10 was a limitation upon the creation of debts or liabilities by the counties as such. It is worthy of note that during all of the time this section remained unchanged no legislative enactment was placed upon the statute books authorizing counties to contract debts within the limitation of the $5,000.  It is apparent that the section was construed to be both an inhibition and a permission to counties, without further legislative authority, to contract debts within the prescribed limit.  As said by this court, speaking through Mr. Justice BURNETT in *Andrews* v. *Neil,* 61 Or. 471, at page 474 (120 Pac. 383, 123 Pac. 32):

"Every county has always had the power to create debts for the purpose of building permanent roads, provided the voluntary liabilities of the county should not be increased thereby to exceed $5,000."

In 1910 the people of the state by an initiative measure amended Section 10, Article XI, of the Constitution to read thus:

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion, or to build permanent roads within the county; but debts for permanent roads shall be incurred only on approval of a majority of those voting on the question": General Laws of Oregon 1911, p. 11.

Again in 1912, by means of the initiative, the people of the state amended Section 10 by adding thereto the following words:

"And shall not either singly or in the aggregate with previous debts and liabilities incurred for that purpose exceed two per cent of the assessed valuation of all the property in the county": General Laws of Oregon 1913, p. 9.

In order to furnish election machinery by which the amendment could be put into execution, and elections held and bonds issued by the counties for the construction of permanent roads, Chapter 103, General Laws of Oregon 1913, was enacted by the legislature. The title of the act, which indicates its scope and purpose, is as follows:

"To authorize the county courts of the State of Oregon to issue and sell bonds or county warrants of the county for the purpose of building and maintaining permanent highways within the respective counties, and to provide a sinking fund for the purpose of retiring the bonds at maturity; to authorize the several counties of the State of Oregon to hold special elections for the purpose of submitting to the voters of the county the question of the issuance of bonds and warrants; and generally to provide a complete manner of procedure for the issuance of county bonds for the purpose of the building, construction and maintenance of permanent highways."

After detailing all of the provisions indicated by the title of the act, Section 19 provides as follows:

"No bond shall be issued under this act that will in the aggregate, together with the bonds outstanding, and the bonds offered to be sold, be in excess of two (2) per cent of the assessed valuation of the county at the time the bonds are issued."

Several counties availed themselves of the authority granted by the Constitution, and in conformity to the procedure provided by Chapter 103 held elections and authorized the issuance of bonds for building permanent roads, and in this manner expended large sums of money, approximating the 2 per cent limitation. In 1919, in answer to a demand for a further construction of good roads, and in order to be able to raise funds therefor, the legislature of that year submitted to the people a further amendment to Section 10, Article XI, of the Constitution, which was regularly adopted, and reads as follows:

"No county shall create any debts or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except to suppress insurrection or repel invasion or to build or maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate, with previous debts and liabilities incurred for that purpose, exceed six per cent of the assessed valuation of all the property in the county": Oregon Laws, Vol. 1, p. 170.

1. The rule is stated in 12 C. J., Section 106, page 729, thus:

"Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the en-

forcement of a duty imposed. That a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of the constitutional provision necessarily preclude legislation for the better protection of the right secured. A constitutional provision which is merely declaratory of the common law is self-executing. A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will."

2. If a county could create general indebtedness for any purpose under the original Section 10, Article XI, of the Constitution, as has been the ruling and policy of the state since 1859, then it must follow as a necessary sequence that when the $5,000 limitation was changed, and upon approval of a majority of the legal voters voting on the question, a county might incur an additional indebtedness for the purpose of building permanent roads, the authority to do so must be considered as granted by the amendment, or, in other words, the amendment adopted is permissive. Therefore the authority of the people of the county to issue road bonds was not granted by Chapter 103, Laws of 1913, but by the Constitution.

While it may be that a portion of the amended section as it now reads is prohibitive, that part which reads, "debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate, with previous debts and liabilities incurred for that purpose, exceed 6 per cent of the assessed valuation of all the property in the county," must be considered as conferring authority. Although it is to a certain extent stated in the negative, by changing

the limitation, it has granted authority for the creation of indebtedness up to the prescribed limit. This construction is emphasized by the fact that, when the last amendment of 1919 was submitted to the people there appeared in the voters' pamphlet an affirmative argument setting forth the effect and provisions of the amendment, wherein the reason given why the amendment should be supported, and the provisions of the measure, were stated as follows:

"(1) The measure is intended to grant to counties the option of voting bonds up to 6 per cent of assessed valuation for road purposes. It is a matter left entirely with the particular county. As to whether or not, after the passage of this measure, a county votes bonds, will be no concern of any other county.

"(2) Many counties desiring more funds for road work are asking that you consent that they burden themselves if they so desire. Your affirmative vote on this measure does not prejudice you in the least, nor cost you a penny.

"(3) If, in the opinion of a county, good roads are a paying investment and badly needed, is it not your duty to vote to allow that county to put the question to its people?

"(4) A private corporation cannot do business with only 2 per cent of its capital available; much less can a public corporation make necessary improvements on that amount; 6 per cent is little enough.

"(5) This is a purely local option measure; no county need assume burdens unless it desires.

"Appeal is made to the sense of fairness of voters to grant the opportunity and privilege for which the measure provides."

3. Prohibitive and restrictive provisions in a constitutional amendment are self-executing, unless it clearly appears from the language of the entire pro-

vision and the circumstances of its adoption that the enactment of legislation was contemplated as requisite to put it into effect. The scope and purpose of such provisions may not be restricted by adverse legislation, and all statutes then existing or which may· thereafter be passed inconsistent with such provisions are null and void: *Long* v. *Portland,* 53 Or. 92 (98 Pac. 149, 1111); *State* v. *Harris,* 74 Or. 573 (144 Pac. 109, Ann. Cas. 1916A, 1156); *Wren* v. *Dixon,* 40 Nev. 170 (161 Pac. 722, 167 Pac. 324, Ann. Cas. 1918D, 1064); 12 C. J. 731; Cooley Const. Lim. (7 ed.), 121.

In 12 C. J., 739, Section 143, it is said:

"A constitutional provision that is not self-executing does not affect existing statutes until the enactment of legislation putting it into effect; but if a portion of such provision is repugnant to a statute in force when the Constitution was adopted, it abrogates such statute, notwithstanding the remainder of the constitutional provision is not self-executing, and is left without legislation in aid of it."

See *Griebel* v. *State,* 111 Ind. 369, 12 N. E. 700), and *Hawley* v. *Anderson,* 99 Or. — (190 Pac. 1097, 1099), dissenting opinion of Chief Justice McBRIDE. The latter opinion thoroughly presents the question involved, and it is not the intention of the writer to add anything thereto.

In *Chew Heong* v. *United States,* 112 U. S. 536, at page 549 (5 Sup. Ct. Rep. 255, at page 260, 28 L. Ed. 770, see, also, Rose's U. S. Notes), Mr. Justice HARLAN, delivering the opinion of the court, quotes from *Wood* v. *United States,* 16 Pet. 362 (10 L. Ed. 987), as follows:

"Mr. Justice STORY, speaking for the court upon a question of the repeal of a statute· by implication,

said: 'That it has not been expressly or by direct terms repealed is admitted; and the question resolves itself into the narrow inquiry whether it has been repealed by necessary implication. We say by necessary implication, for it is not sufficient to establish that subsequent laws cover some, or even all, of the cases provided for by it, for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new laws and those of the old, and even then the old law is repealed by implication only *pro tanto,* to the extent of the repugnancy.' "

The same principle was recognized by this court in the case of *State* v. *Portland, R. L. & P. Co.,* 56 Or. 32 (107 Pac. 958). The Constitution as amended in 1919, in effect said to the counties:

"You may create debts for permanent roads in your county not exceeding 6 per cent of the assessed value of the property of the county, on approval of a majority of those voting thereon."

The constitutional amendments of 1912 and 1919 both contain two elements—one an express grant to counties to create debts for permanent roads, and the other a limitation on the amount of the debts created for such purposes. The grant is the right to create debts up to a certain limit for road purposes on approval of a majority of electors voting thereon. The right to create debts is granted, the limit upon the debts so created is fixed, and the conditions upon which the right may be exercised are named. Neither the right to create the debts, nor the amount of debts that may be created, nor the conditions upon which the debts may be created, are left to legislative control, but are granted, limited and named in the amendment to the Constitution itself.

Under our form of government the sovereign will resides in the people. That will is expressed in a written Constitution, which constitutes the fundamental law of the state. The people, in their sovereign capacity, assumed the function of limiting, by the amendments of 1912 and 1919 to Section 10, the amount of indebtedness that counties could incur for building and maintaining permanent county roads, and thereby withdraw that subject from legislative authority.

4. If Section 10 in its present form grants to counties authority to create indebtedness for the purpose of constructing and maintaining permanent roads, on approval by a majority vote, to the extent of 6 per cent of the assessed valuation of all the property in the county, as we think it does, then the provision of Section 19 of Chapter 103, General Laws of Oregon, 1913, directing that no bond shall be issued under the act which will make the bonded indebtedness exceed 2 per cent of the assessed valuation of the county at the time the bonds are issued, is inconsistent with the late amendment to Section 10, and is null and void. The other provisions of Chapter 103 are not repugnant to the constitutional amendment, and are therefore in full force and effect.

The language of Section 19 of Chapter 103, and of the whole act, clearly indicates that it was the purpose of the legislature to simply provide a *modus operandi* for counties in the issuance of bonds, and not to grant or restrict the authority for incurring indebtedness conferred by the Constitution. Section 19 merely called attention to the then existing limit prescribed by the Constitution. It does not refer to the incurring of debts or liabilities by counties. It only relates to the bonds, which are merely evidences

of such indebtedness. The legislature has been in session since the amendment of Section 10, Article XI, of the Constitution in 1919, and submitted another amendment to that section by adding a proviso authorizing Crook and Curry Counties to issue bonds for additional purposes, which amendment was adopted in 1920. The lawmakers evidently did not deem it necessary, in order to make the amendment operative, to enact any further legislation.

5. A constitutional amendment designed to cure a defect in the law or remove an existing mischief, should never be construed as dependent for its efficacy and operation on legislative will: 12 C. J., p. 730, § 106.

6. When Section 10 was amended in 1910, granting the power to counties to contract debts for permanent roads, without limitation, but only on approval of the majority of those voting upon the question, it was held in *Andrews* v. *Neil,* 61 Or. 471, at page 474 (120 Pac. 383, 123 Pac. 32), that the amendment clearly contemplated that the question of incurring an indebtedness for this purpose should be submitted to the voters of the county, that this rendered necessary an election, and that before an election could be held, the machinery for holding such election must be provided. Consequently in 1913 the legislature enacted Chapter 103, General Laws of Oregon 1913, which, as its title indicates, provides a complete manner of procedure for holding an election and the issuance of county bonds for the purpose of the construction and maintenance of permanent highways. Therefore when Section 10 was amended in 1919, Chapter 103, eliminating Section 19, provided a means for furnishing all the machinery for holding an election to authorize the

issuance of road bonds, and to put the amendment into operation.

While it may be conceded that the amendment to Section 10, Article XI, of the Constitution, in 1919, is not wholly self-executing, it is by reason of Chapter 103 rendered operative. There was no necessity for further legislation on this subject to render the amendment of 1919 effective. In *Ladd* v. *Holmes,* 40 Or. 167 (66 Pac. 714, 91 Am. St. Rep. 457), where the primary election law was before the court, an objection was made that the primary law had no effect, inasmuch as it made no provision for any special election. To this objection this court, speaking through Mr. Justice WOLVERTON, said, 40 Or., on page 190 (66 Pac. 722, 91 Am. St. Rep. 457):

"Objection is made that the law makes no provision for any special election that may become necessary, but this is not vital, as the effect would be to relegate the parties to the law heretofore governing primary elections."

In considering the question of whether or not a constitutional amendment was self-executing, the court in *Winchester* v. *Howard,* 136 Cal. 432, at page 440 (69 Pac. 77, at page 79, 89 Am. St. Rep. 153, at page 158), says:

"The procedure need not be provided by the Constitution, if the Code of Civil Procedure and other remedial laws supply what is necessary."

After a careful examination and reconsideration of the question involved, we hold that the amendment of Section 10, Article XI, of the Constitution, taken in connection with Chapter 103, General Laws of Oregon 1913, is in full and complete effect. The bonds in question were regularly issued and are valid obligations of the county of Union.

The demurrer to the answer to the writ is sustained, and a peremptory writ is awarded.

PEREMPTORY WRIT ALLOWED.

BENSON, J., dissents.

BURNETT, J., Dissenting.—The state Constitution has always been construed as a restriction, and not a grant, of power. Constantly since the organization of the state government the rule has been that the legislative assembly lawfully can enact any statute it chooses, unless forbidden by the Constitution of the state or of the United States. Section 10 of Article XI of the state Constitution reads thus:

"No county shall create any debts or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except to suppress insurrection or repel invasion or to build or maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate with previous debts and liabilities incurred for that purpose, exceed six per cent of the assessed valuation of all the property in the county."

The language is restrictive throughout. It does not grant any power affirmatively. Its prohibitions are laid upon the counties only. It does not profess to prevent the legislative assembly from further limiting the indebtedness which counties may incur. It well may be conceded that the legislature could not authorize county indebtedness for roads in excess of the 6 per cent limit; but the power of that body is not limited in the other direction. The question ought not to be settled by consideration of this section alone. It is only a part of the Constitution, and that

98 Or.—17

instrument ought to be construed and enforced so that, if possible, all its parts shall harmonize. In the adoption of this section there was no intention to abridge the power of the legislature to enact laws to promote economy and lower taxation. The positive limit of 2 per cent established by law is not affected by the constitutional negative of 6 per cent. In construing the new section we must bear in mind the former and older Section 1 of Article IV, vesting the legislative power in the legislative assembly, subject, of course, to the people's reservation of the powers of initiative and referendum.

The amendment does not in any sense profess to divorce counties from the control of the legislature in limiting their expenditures or to repeal any of its previous enactments. To give the amendment the effect of an affirmative direction or license to counties to go in debt 6 per cent of their property valuation, is to cripple the legislative power unwarrantably.

I concur in the dissent of Mr. Justice BENSON.