Argued June 23; affirmed July 8; rehearing denied October 13, 1931

# HENDERSON (Deckebach, Intervener) v.
## CITY OF SALEM
(1 P. (2d) 128, 4 P. (2d) 321)

*M. Clifford Moynihan,* of Salem, on the brief for plaintiff.

*William H. Trindle,* City Attorney, of Salem, for defendant.

*Walter E. Keyes,* of Salem, and *A. P. Matthews,* of San Francisco, Cal. (Keyes & Page, of Salem, and James D. Adams, of San Francisco, Cal., on the brief), for intervener and respondent.

CAMPBELL, J. On April 15, 1930, there was delivered to the city recorder of Salem, at his office, an initiative petition, containing one thousand, eight

hundred and ninety signatures, proposing an amendment to the charter of the city of Salem, to be known as section 90 of that charter. The petition, after it was received by the city recorder was checked by him within five days and found to contain 1,476 valid signatures. This was more than the required number under the law. The city recorder then filed said petition on April 21, 1930. A ballot title was prepared by the city attorney and the proposed charter amendment submitted to the voters of the city at the regular primary election, May 16, 1930. The vote cast on the amendment was 4,296 affirmative and 2,090 negative. Thereafter the mayor of Salem duly issued his proclamation declaring the said charter amendment to be duly adopted.

This amendment authorized and directed the city council of Salem to acquire, by purchase or condemnation, the water plant of the Oregon-Washington Water Service Company including all its equipment and distributing system. It also authorized the city to issue bonds not exceeding $1,200,000 for that purpose. Thereafter the city offered for sale $10,000 worth of said bonds. Thereupon this suit was filed.

The complaint alleges various reasons why said charter amendment was not legally enacted and that all proceedings thereunder are void, and asked for an injunction against the city enjoining the city of Salem and its officers from further proceedings thereunder. Thereafter F. G. Deckebach was permitted to intervene. He filed a complaint attacking not only the procedure by which the amendment was adopted but also the amendment itself, as being unconstitutional and void. We shall treat both complaints as one and shall hereafter refer to plaintiff and intervener simply as plaintiff.

The cause was put at issue by defendant filing an answer denying in effect that there were any legal defects in the amendment or the proceedings by which it was adopted. The cause was tried and submitted to the court who rendered a decree declaring the amendment invalid and void. Defendant appeals.

There is practically no dispute as to any of the facts necessary to be considered for a proper disposition of this cause. The reasons alleged in the complaint why the charter amendment is invalid may be summarized as follows:

1. The initiative petition was not filed by the recorder thirty days before the election.

2. Such measures cannot be submitted at a primary election.

3. The form of the petition did not conform to the law.

4. The ballot title contained more than one hundred words.

5. The amendment was published without the publication of the full section as amended.

6. The title of the amendment is defective in that it does not properly cover all the provisions.

7. The ballot did not properly submit the measure to the voters.

8. The amendment empowers the city to incur a bonded debt in excess of the constitutional and statutory limitation.

9. The amendment is ultra-mural in purpose and effect, and beyond the power of a local initiative charter.

10. That the charter amendment grants legislative power to a water commission created under its provisions.

This summary covers the principal contentions set out in plaintiff's complaint.

■ Ordinance No. 1464 enacted by the city of Salem October 24, 1916, provides the manner and method of procedure in carrying into effect the initiative and referendum powers reserved to the legal voters of municipalities under section 1a, article 4, of the Constitution of Oregon. The provisions of this ordinance governing the time of filing initiative petitions, as contained in sections 5 and 7 thereof, read as follows:

(Section 5) "The recorder shall receive for checking any properly verified petition for the initiative or for the referendum. It shall be the duty of the recorder to check over the names on such petitions, and file the same within five days if the required number of legal voters have signed such petitions.

(Section 7) "Petitions for proposed ordinances or charter amendments by the initiative, and petitions for submitting ordinances for referendum, shall be filed, with signatures and verification complete, with the recorder of the city of Salem, not later than thirty days before the next regular city election at which such proposed ordinance or amendment is to be submitted or referred."

■■ Appellant concedes, "That the filing of the petition with the city recorder 'no later than thirty days' prior to the date of election is jurisdictional." If the petition is not filed within the time, all proceedings thereafter are void: *State ex rel. v. Macy,* 82 Or. 81 (161 P. 111); *Kellaher v. Kozer,* 112 Or. 149 (228 P. 1006). It will be observed that section 5, of Ordinance No. 1464, imposes the duty upon the recorder to receive the petitions and check the names of the signers. The framers of the ordinance knew, as everyone else must know, that it would be a mental and physical impossibility to discharge this duty without being granted a rea-

sonable length of time. The section therefore fixes the time at five days. Until the checking is done it cannot be said that the petition with signatures and verification can be complete at the time the recorder receives the petition, if after checking he discards, as he did with the present petition, more than four hundred names. The petition is not complete until the work of checking is done. When the checking is done and the petition complete with sufficient valid signatures thereon, it shall be filed; that is, it then becomes a part of the public records of the recorder's office of the city, subject to the inspection of the public generally: *State ex rel. v. Astoria,* 63 Or. 171 (126 P. 999). It cannot be said to be open to public inspection while in the hands of the recorder for one specific purpose, that of checking the signatures; a purpose which could not be accomplished if the recorder is compelled to allow the public generally to have access to it during the same time.

Section 7, above quoted, was intended to and does provide for the completed petitions to be filed and open to the inspection of the public for a full thirty days prior to the election. It must be remembered that the people of Oregon in adopting the initiative and referendum system of legislation were to a large extent pioneering and experimenting with a theory of government. They believed the method would be of great value as a medium for remedying grievances. They further realized that in the hands of the unscrupulous the rights and privileges provided for therein could be much abused. An earnest effort was made to establish safeguards and guard against, and provide for as many contingencies as possible, to the end that the legal voters, those having the duty and responsibility of adopting or rejecting, should have

a full and fair opportunity of informing themselves and be in a position to exercise their franchise on such measures intelligently.

We, therefore, agree with the learned trial judge that the petition was not filed in time.

■■ ■ Can measures be submitted at a primary election? Ordinance No. 1464 does not directly say when initiative measures shall be submitted. Section 1 of said ordinance provides the form of petition as follows:

"We * * * demand that the following proposed * * * amendment to the city charter shall be submitted to the legal voters at the regular election to be held on the —— day of —— * * *."

Section 7 of the same ordinance provides that the petitions shall be filed "not later than thirty days before the next regular city election at which such proposed * * * amendment is to be submitted * * *."

Section 11 of the same ordinance provides that measures may be submitted by the city council "at either a special or general election." What did the framers of said ordinance No. 1464 mean when they used the term "regular city election"? It will be observed that this ordinance was adopted October, 1916, at which time the city charter provided for a primary election and a general election, the provision of the city charter in force being "* * * there shall be a general election in the city of Salem on the first Monday in December, annually. A primary election for nominating candidates to be voted on at such city election shall be held on the first Monday of November, preceding such election * * *."

This section provides for a "general election" and also for an election for the special purpose of nominating candidates.

"The regular general biennial election in Oregon for the year A. D. 1910 and thereafter shall be held the first Tuesday after the first Monday in November * * *. All laws pertaining to the nomination of candidates, registration of voters, and all other things incident to the holding of the regular biennial election shall be enforced and be effected the same number of days before the first Tuesday after the first Monday in November that they have heretofore been before the first Monday in June biennially, except as may hereafter be provided by law." Oregon Constitution, Sec. 14, Art. 2.

"On the third Friday in May of the year 1920 and biennially thereafter, there shall be held in the several election precincts of the state of Oregon a general primary nominating election at which shall be nominated or elected such United States, state, district, county, city, town and precinct officers as are to be elected or nominated at such general primary nominating election or general election of that year." Oregon Code 1930, 36-302.

In June, 1918, the people of the state of Oregon amended the Oregon constitution by adopting section 14a of article 2, as follows:

"Incorporated cities and towns shall hold their nominating and regular elections for their several elective officers at the same time that the primary and biennial elections for state and county offices are held, * * *. All provisions of the charters * * * of incorporated cities and towns pertaining to the holding of elections shall continue in full force and effect except so far as they relate to the time of holding such elections * * *."

When the city charter is read in connection with these constitutional and statutory provisions, it will read as follows:

* * * There shall be a general election in the city of Salem on the first Tuesday after the first Mon-

day in November. A general primary nominating election for nominating candidates to be voted on at such city election shall be held on the third Friday of May biennially.

When an election is held for a specified, particular purpose, no other matters may be submitted at such election. The constitution, the state statute and the city charter all notify the electorate that the only purpose of holding a primary nominating election is to nominate candidates. To that extent it is a special election. Should the city council call a special election, which it has the right to do, for the purpose of submitting any charter amendment to a vote of the people, and the call for such special election specified the purpose for which it was called, no one could contend that any other matters could be legally submitted to the voters at such special election. We conclude there is no authority under the constitution or the general laws, or the charter of the city of Salem, for submitting charter amendments by initiative petition, at the primary election.

■■■ The contentions of plaintiff in regard to the form of the petition, or that the ballot title contains more than one hundred words, or that the ballot did not properly submit the measure to the voters, are untenable. The matters complained of in these objections may be subject to criticism but are not fatally defective.

■ ■ The proposed charter amendment was not an amendment to any particular section of the existing charter, but to the whole charter, by adding an additional section to be known as section 90. The title of the amendment is: ''An act to amend the charter of the city of Salem by adding a new section * * *.''. Nowhere in the body of the act does it even use the

550

word "amend." While it undoubtedly supersedes some earlier provisions of the charter, it provides an additional method of accomplishing a certain object. Its submission would not necessitate a republication of the whole charter.

██ The objections to the charter amendment covered by 6, 8, 9, 10 are to the constitutionality of the provisions of the ordinance. These are simply moot questions. Some of the provisions of the charter amendment, if legally enacted, are clearly constitutional, and we may not assume that even should it contain an unconstitutional provision (which we do not determine) that the city or its officers would be governed thereby.

Finding no error, the decree of the lower court is affirmed.

---

Petition for rehearing denied October 13, 1931

ON PETITION FOR REHEARING

(4 P. (2d) 321)

*Teal, Winfree, McCulloch & Shuler,* of Portland, and *William H. Trindle,* of Salem, for appellant.

*M. Clifford Moynihan,* of Salem, for respondent Henderson.

*Keyes & Page,* of Salem, for respondent Deckebach.

 CAMPBELL, J. The appellants have filed a petition earnestly requesting a rehearing. In this petition it is first claimed that the court erred in determining that the measure in question could not be submitted at the primary election.

"If, by operation of law, the election invariably occurs at stated intervals, without any superinducing cause, except the efflux of time, the election is general, in which case all qualified persons are presumed to have knowledge thereof, and hence the failure of any officer or person upon whom the duty devolves to give a prescribed. notice, does not invalidate the votes passed thereat."

\* \* \* \* \*

"In all general elections, the time, place and manner of holding which are prescribed by law, the rule is well settled that electors must take notice thereof, \* \* \*. In the case of special elections, however, all the statutory requirements as to proclamations or other means of giving notice, are considered as mandatory, and must be observed in order to render the vote of the electors participating therein valid. \* \* \* Where, however, some local project may be initiated by petition or other means, an election to determine whether such proposition shall be adopted is special and the electors can not be presumed to have knowledge of an application of the power which calls for the necessity of exercising the electoral franchise, in which instance a compliance of all the statutory requirements in respect to the performance of the conditions precedent is mandatory in order to validate the election." *Marsden v. Harlocker,* 48 Or. 90 (85 P. 328, 120 Am. St. Rep. 786).

"The description of a general election thus given, though applicable to the facts there involved, is not broad enough to include all elections that might properly come within the modifying term 'general.' \* \* \*

"Section 1 of chapter 422, General Laws of Oregon, 1917, conforming to a statement contained in Article IV, Section 1, of the Constitution of this state, declares:

" 'A special election shall be held in the several voting precincts of this state on the fourth day of June, 1917.'

"The use of the qualifying word 'special' as thus indicated did not make the election so to be held of

that kind, for the election having been simultaneously held in every voting precinct of the state conclusively establishes the fact that the election was general and not special * * *." *Bethune v. Funk,* 85 Or. 246 (166 P. 931).

"The election, although held on the same day as the general election, was special in character. It was not called or held in pursuance of those general statutes which provide for biennial elections for the purpose of choosing public officers, but was called by order of the County Court. * * * Its only relation to the general election arises from the fact that the measure was placed, for the sake of economy and convenience, upon the general ballot. * * * Called as it was for a special purpose by a special order and by a separate and special notice, we are of the opinion that it was a special election for the purpose of voting on the question of issuing bonds." *Wilson v. Wasco County,* 83 Or. 147 (163 P. 317).

There is quite a difference between submitting an ordinance to the voters "at the next ensuing election" (Oregon Code 1930, 36-2015), and submitting an ordinance to the voters "at the next regular city election" (Salem Ordinance No. 1464), *State ex rel. v. Gilmore,* 122 Or. 19 (257 P. 21).

Thus it will be seen that an election may be general as to time. It may be general as to purpose. It may be general as to territory, yet special as to time and purpose. It may be general as to time, purpose and territory, and yet special as to electors. When the present primary law was enacted, many voters were excluded from participating in elections thereunder. Only such voters as were in good faith members of a political party, as defined by statute, had the right to vote at such elections. Many electors who were members of a minor political party, or were independent of any

party, were not allowed to vote at such elections, unless the notice calling the election specified that some other matter besides the nomination of candidates was submitted: Oregon Code 1930, 36-305.

"All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election * * *." Const. art. 4, § 1.

The legislature designated the primary nominating election as a general election: Oregon Code 1930, 36-302; *Taylor v. Multnomah County,* 119 Or. 123 (248 P. 167). The charter of the city of Salem does not designate its primary election as a general election.

"A primary election for the nomination of candidates to be voted for at the regular general election shall be held biennially at the same time that the primary nominating election for state and county offices is held * * *." Charter of the city of Salem, section 4.

It is also contended in the petition for rehearing that the citizens and city government of Salem have always given ordinance No. 1464 a different interpretation than that given by the court. There is nothing in the record of the case before us regarding any administrative interpretation. It is also contended that ordinance No. 1464 is a remedial statute and should be liberally construed. When it is proposed by ordinance to create an indebtedness against the city for which the property of every citizen will be liable, and at least part of which must be paid by future generations, then every preliminary prerequisite should be strictly complied with.

The petition for rehearing will be denied.

BEAN, C. J., and BELT, J., concur in the result.