Argued April 7; reversed April 19, 1932

KNEELAND *v.* MULTNOMAH COUNTY ET AL.

. (10 P. (2d) 342)

*Stanley Myers,* of Portland, for appellant.

*Lotus L. Langley,* District Attorney, *George A. Pipes,* Deputy District Attorney, and *Dan J. Malarkey,* all of Portland (Charles S. Cohn, Deputy District Attorney, of Portland, on the brief), for respondents.

CAMPBELL, J. This suit is brought to enjoin the county commissioners of Multnomah county from submitting to the vote of the people at the coming primary election, May 20, 1932, the question of an increase in the tax levy above the constitutional limitation of 6 per cent, and to enjoin the commissioners from issuing warrants against such potential fund, should the matter be submitted to the voters and receive favorable action on their part prior to the levying of the tax. The circuit court sustained a demurrer to the complaint and dismissed the suit.

Plaintiff appeals.

The county commissioners, on March 30, 1932, passed the following resolution:

"Now, therefore, it is hereby resolved, ordered and declared, that it is necessary, in the judgment of this board, to increase the amount of the levy on the assessment roll of said Multnomah county for the year 1932 over the amount limited by the constitution except on vote of the people, for the reasons and purposes, and in the amount as follows:

"Special levy of $750,000 on the County Assessment roll of said Multnomah County of and for the year 1932 to provide funds for relief during 1932 and 1933 for the indigent and poor and all others for whom the county legally is authorized to provide relief, and to retire warrants issued for any such purposes during 1932 or 1933. This tax shall not be computed as a part of the revenue which is subject to the limitation of § 11 of Art. XI of the Oregon Constitution and shall be in addition to all other taxes which legally may be levied.

"Be it further resolved, ordered and determined, that the question of such additional tax levy shall be submitted to the legal voters of said Multnomah County at the general primary election to be held throughout said county on May 20, 1932, and that the necessity thereof be certified to the County Clerk in the following form:"

The commissioners thereupon issued the necessary certificate to the county clerk so that the question would be submitted at the general primary election in May.

Art. XI, § 11, of the Constitution provides:

"Unless specifically authorized by a majority of the legal voters voting on the question, neither the state nor any county, municipality, district or body to which the power to levy a tax shall have been delegated shall in any year so exercise that power as to raise a greater amount of revenue for purposes other than the payment of bonded indebtedness or interest thereon * * * than the total amount levied by it in the year immediately preceding * * * plus six per centum thereof;"

The same Constitution provides; Art. III, § 1:

"The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

Art. IV, § 1, provides:

"The legislative authority of the state shall be vested in a legislative assembly, consisting of a Senate and House of Representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. * * * All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. * * *"

Art. IV, § 1a, provides:

"* * * The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, * * *"

It will be observed that where the constitution does not fix the time and manner of holding elections, Art. IV, § 1, concedes the power to the legislative assembly to make the necessary provision therefor. So they provided in said Art. 4, § 1, that all measures referred to the people should "be submitted at the general biennial elections, except when the legislative assembly shall order a special election." Thus putting beyond the power of the legislature to defer the time beyond the next general election.

The legislature, in its wisdom and in discharge of its duties imposed by the constitution, Art. 4, § 1 supra, and to provide an orderly means of carrying out the said provisions of the constitution, enacted into law what is now known as § 69-1004, Oregon Code 1930, as follows:

"Whenever it is necessary in the estimation of the county court of any county to increase the amount of the tax levy over the amount limited by the constitution except on vote of the people, said county court shall certify to the county clerk that such increase, in its judgment, is necessary, stating the reasons therefor and the amount of such increase is not to exceed one hundred words. Such determination and certificate shall be made not less than thirty-five days before the first Tuesday after the first Monday in November in any year. Thereupon the county clerk shall issue and mail to the respective judges and clerks of election

notices in the same manner as herein provided in the case of an election upon the question of increasing the state tax·levy. Thereafter the election thus called ·shall be held on said date in the same manner as other general elections are held and the votes cast upon said election shall be received, counted, returned and canvassed in the same manner as votes for candidates for county officers.''

The resolution passed by the county commissioners on March 30, and the certificate issued to the clerk, amounts to a call by the county commissioners, not the people, for a special election for the purpose of permitting the people to exercise the power of referendum reserved in Art. IV, § 1a, and of voting on the proposed increased levy. There is nothing in the statute nor in the constitution authorizing the county commissioners to call a special election for this purpose, at any other time than on the first Tuesday after the first Monday of November of any year. Article XI, § 11, of the Constitution has not taken away from the legislature any of the powers conferred by Art. IV, § 1, regarding elections. "There can be no valid election except in pursuance of constitutional or statutory authority": *State ex rel. v. Kozer,* 115 Or. 638 (239 P. 805), and cases therein cited; *Henderson v. Salem,* 137 Or. 541 (1 P. (2d) 128, 4 P. (2d) 321). Until such time as the people by the constitution or· legislation shall give to the county commissioners power to call special elections at other times, the matter remains exclusively in the hands of the legislature to say how and when such elections shall be called. In any event an election once a year on a day fixed for that purpose would seem to be a reasonable provision to enable the voters of the county to exercise their right of permitting the county court to increase the tax levy above the six per cent limitation. There is good reason for the action

taken by the legislature in fixing a particular day and having that day, when possible, on the same day as the general election. It prevents a multiplicity of elections. It is an attempt to get as full an expression of the legal voters on the matter as possible. The writer feels that § 69-1004 is clearly constitutional. If it be a restriction upon the right of the people to vote taxes upon themselves, it is such a restriction as the people, by the constitution, conferred upon the legislature power to enact.

■ However, the real object in calling the election for May 20, the day of the primaries, is not so much for the purpose of getting the consent of the voters to increase the levy, as it is an attempt to evade the debt limitation provision of the Constitution, Art. XI, § 10, and to issue warrants against the potential fund thus permitted to be created, if authorized, prior to the levy being made.

Article XI, § 10, of the Constitution of Oregon provides as follows:

"No county shall create any debt or liability which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except * * * to build or maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question * * *"

If the county commissioners, before levy is made, may anticipate and issue warrants against the excess fund thus authorized by the voters, by the same logic and with equal facility it may anticipate and issue warrants during the year 1932 against the revenue which, by general law without a vote of the people, it is authorized to levy in the year 1933. If it may so anticipate and expend in the year 1932 the authorized

revenues of the year 1933 why not any future year's revenues. Spending unlevied taxes of the county is creating a debt. It was to prevent such expenditure in advance of anticipated revenue that Art. XI, § 10, was placed in the Constitution.

It is no longer open to dispute in Oregon that "*after a levy is made*, the payment of the taxes is regarded as a certainty, and for the purpose of determining whether an expenditure will exceed the debt limits of a county, it will be assumed the tax has been collected." State ex rel. v. Stannard, 84 Or. 451 (165 P. 566, 571, L. R. A. 1917F, 215). The italics are ours.

The converse of this is equally true, before a levy is made the creation of a fund by taxation is purely anticipatory.

The decree of the circuit court should be reversed and one entered enjoining the defendants and each of them from submitting said question of authorizing an additional tax levy on May 20, 1932, or at any other time than on the first Tuesday after the first Monday in November. Neither party to recover costs.

It is so ordered.

BROWN, RAND, ROSSMAN, and KELLY, JJ., concur.

————

BELT, J., dissenting. This is a suit to enjoin the submission to the voters of Multnomah county, at the general primary nominating election on May 20, 1932, the question of a special tax levy of $750,000 to provide funds for relief of the poor and indigent of Multnomah county. The proposed special levy was certified by the board of county commissioners to the county clerk in part as follows:

"Special levy of $750,000.00 on the County Assessment Roll of said Multnomah County of and for the year 1932 to provide funds for relief during 1932 and

1933 for the indigent and poor and all others for whom the County legally is authorized to provide relief, and to retire warrants issued for any such purposes during 1932 and/or 1933. This tax shall not be computed as part of the revenue which is subject to the limitation of Section 11 of Article XI of the Oregon Constitution, and shall be in addition to all other taxes which legally may be levied."

In the order directing the certification of the proposed special tax levy the board of county commissioners recites that:

"WHEREAS, the general business depression has caused a great increase in the number of unemployed in the County of Multnomah, in the State of Oregon, and has thereby increased said county's requirements for relief for the indigent and poor to the point where all funds provided for such purpose by the 1932 budget have been exhausted; and

"WHEREAS, it is the opinion of the Board of County Commissioners of said Multnomah County that conditions as to unemployment and as to the indigent and poor in and of said Multnomah County will continue throughout the year 1933; and

"WHEREAS, it is, in the opinion of this Board, absolutely necessary, to prevent actual suffering and want, that additional funds be made available for such relief during the year 1932, and that funds for such purpose will be necessary during the year 1933, in excess of the amount that can be included in the Budget of said Multnomah County for the year 1933;
\* \* \* \* \* \*"

It is alleged in the complaint that, if the special levy is approved by the majority of the voters in the primary election in May, the defendants threaten to and will, unless restrained by order of court, proceed to levy and collect said taxes and will "issue warrants during the year 1932 for the purposes of said pretended

special tax levy, even though no funds would be available under said special tax levy legally authorized before the year 1933."

The general demurrer to the complaint was sustained and, upon refusal of the plaintiff further to plead, the suit for injunction was dismissed.

It is the contention of the plaintiff (1) that, by reason of section 69-1004, Oregon Code 1930, this special tax levy can be submitted only at the general election on "the first Tuesday after the first Monday in November in any year"; and (2) that the issuance of warrants, during the year 1932, against funds to be raised by a tax levy on the 1932 assessment roll, but not collected until 1933, it is not authorized by law.

The board of county commissioners through their order—which partakes somewhat of the form of a resolution—has declared the existence of a public emergency in Multnomah county in that, by reason of the unemployment situation, funds are necessary to provide relief for the poor and indigent. We have then a case where human interests are vitally involved and where a subordinate branch of the government is endeavoring to meet its moral and legal obligation to administer to those in dire need. Funds are exhausted. In this crisis the defendant commissioners have seen fit to submit to the voters the question of a special tax levy, that innocent victims of this economic depression may not feel the pangs of hunger. Under such circumstances, no apology need be offered if this court, without doing violence to well established legal principles, resolves reasonable doubt in favor of the right of the people to express their approval or disapproval of the proposed tax levy, at the primary election in May.

In 1916, the people, through the exercise of initiative law, added to the constitution of this state article XI, section 11, which provides as follows:

"*Unless specifically authorized by a majority of the legal voters* voting upon the question neither the state nor any county, municipality, district or body to which the power to levy a tax shall have been delegated shall in any year so exercise that power as to raise a greater amount of revenue for purposes other than the payment of bonded indebtedness or interest thereon than the total amount levied by it in the year immediately preceding for purposes other than the payment of bonded indebtedness or interest thereon plus six per centum thereof; provided, whenever any new county, municipality or other taxing district shall be created and shall include in whole or in part property theretofore included in another county, like municipality, or other taxing district, no greater amount of taxes shall be levied in the first year by either the old or the new county, municipality or other taxing district upon any property included therein than the amount levied thereon in the preceding year by the county, municipality or district in which it was then included plus six per centum thereof; *provided further, that the amount of any increase in levy specifically authorized by the legal voters of the state, or of a county, municipality, or other district, shall be excluded in determining the amount of taxes which may be levied in any subsequent year.* \* \* \*" (Italics are ours.)

It will thus be seen that the above constitutional provision delegated to the legal voters of a county the power to authorize the levy of a tax without regard to the six per cent limitation on indebtedness. While, through this amendment to the constitution, the people were careful to place a limitation or restriction upon tax levying officials, they reserved to themselves the sovereign right to vote any tax they saw fit. It is entirely reasonable to assume that the framers of this

constitutional amendment anticipated that public emergencies might arise which would demand prompt action in the authorization by the people of a special tax levy. Painstaking as were the people in guarding against the improvident expenditure of their money, they doubtless realized the necessity of having a government able to function in time of stress.

It will be observed that, in the constitutional amendment, there is no restriction as to the time when the people may exercise the right to vote a special tax levy. After the amendment of the constitution, the legislature enacted section 69-1004, Oregon Code 1930, to provide the legal machinery for making operative the constitutional grant of power, although at such time, and prior thereto, there was already statutory authority for the holding of primary elections "on the third Friday in May." Section 36-302, Oregon Code 1930.

In *Taylor v. Multnomah County,* 119 Or. 123 (248 P. 167), it was held that a primary nominating election is, within the meaning of the statute, a "general election" and that a county court was authorized to submit, at such an election, the question of the issuance of road bonds. The decision in *Henderson v. City of Salem,* 137 Or. 541 (1 P. (2d) 128, 4 P. (2d) 321), is not inconsistent with that in *Taylor v. Multnomah County,* supra, since the former case involved the particular charter provisions of the city of Salem, in which a primary election was not designated as a general election.

While article XI, section 11, of the Constitution delegates to the legal voters of the county power to vote a special tax levy without limitation as to the time when such right may be exercised, section 69-1004, Oregon Code 1930, purports to restrict the exercise of

such right to a specific date, namely the "first Tuesday after the first Monday in November in any year." While it may be that the constitutional provision is not self-executing and it was proper for the legislature to provide a procedure for the submission of the question of a special tax levy, it was not within its province to contravene the purpose and spirit of the constitutional grant of power. If the legislature could thus restrict the exercise of this right to a specific date, it would seem on principle that it could also provide that a tax levy to create funds to meet a public emergency could be voted only once every two years, three years, or five years. Legislation to provide machinery for carrying into effect a right granted under the constitution is in one category and that which purports to restrict the free exercise of such right is in another. In *Ladd & Tilton Bank v. Frawley*, 98 Or. 241 (193 P. 916), Mr. Justice BEAN, speaking for the court, said:

"Prohibitive and restrictive provisions in a constitutional amendment are self-executing, unless it clearly appears from the language of the entire provision and the circumstances of its adoption that the enactment of legislation was contemplated as requisite to put it into effect. The scope and purpose of such provisions may not be restricted by adverse legislation, and all statutes then existing or which may thereafter be passed inconsistent with such provisions are null and void: Long v. Portland, 53 Or. 92, (98 Pac. 149, 1111); State v. Harris, 74 Or. 573 (144 Pac. 109, Ann. Cas. 1916A, 1156); Wren v. Dixon, 40 Nev. 170 (161 Pac. 722, 167 Pac. 324, Ann. Cas. 1918D, 1064); 12 C. J. 731; Cooley Const. Lim. (7th Ed.) 121."

Also see 12 C. J. 739.

We conclude that the submission of the special tax levy to the legal voters of Multnomah county at the primary election is authorized by law and that such

part of section 69-1004, Oregon Code 1930, as purports to limit the time of submission of such question to an election in November contravenes the constitution and is, therefore, null and void. The legislature, in providing for an election on the "first Tuesday after the first Monday in November in any year," no doubt had in mind the submission of such tax levies at a general election in November in whatever year it occurred. Since such elections occur biennially, such emergency levies, under the language of section 69-1004, Oregon Code 1930, could be made only every two years. We have not a case where the county commissioners have called a special election, nor is there any question of the exercise of the referendum. Neither is any constitutional limitation of indebtedness involved. The county commissioners have undertaken only to submit the proposed tax levy at a general election, viz., the general primary election in May.

We next consider the question as to whether, in the event the tax levy is approved by a majority of the legal voters, the county can, prior to the levy of the tax and before its collection, legally issue warrants on a special fund to be created. Unless the tax levy is authorized by a vote of the people, it is clear that warrants could not legally be issued on a special fund prior to the levy of the tax. However, if the tax is approved by the legal voters of Multnomah county, the tax levying officials have no discretion as to making the levy. If the rule were otherwise, the mandate of the people could be defeated by the arbitrary whim or caprice of tax officials. That is certain which can be made certain. Hence it follows that, in the event the tax levy is authorized by a majority of the legal voters, the levy will be made, and, upon failure to pay the tax levied, a lien will attach. It also follows with legal

certainty that a special fund will be created to pay the warrants which the county proposes to issue in the event the special levy is approved by vote of the people. In *State v. Stannard,* 84 Or. 450 (165 P. 566, L. R. A. 1917F, 215), it was held that, after the levy has been made, the payment of taxes is regarded as a legal certainty, citing in support thereof, *Municipal Security Co. v. Baker County,* 33 Or. 338 (54 P. 174). We think the payment of taxes may also be regarded as a legal certainty, even before the levy has been made, when the levy is authorized by vote of the people. *State v. Stannard,* supra, is authority for the proposition that where taxes are not authorized by vote of the people, expenditures of anticipated funds can not be made until after the levy. It does not, however, preclude the expenditure of anticipated funds which will be derived from a special tax levy authorized by a vote of the people and which is bound to be made. We see no danger in announcing this rule as, after all, the safety and stability of this government depends upon the intelligence of the electors. In the instant case, if the warrants could not be issued until after the levy was made in 1933 no funds would be available for those in need during the year 1932. Can it be that the county government is thus precluded from functioning? We answer, no.

The decree of the lower court should be affirmed.

BEAN, C. J., concurs in the result of this dissenting opinion.