No. 12,513.

Continental Mutual Insurance Company *v.* Cochrane.

(4 P. [2d] 308)

Decided October 5, 1931.

Mr. R. H. Walker, for plaintiff in error.

Mr: Robert E. Winbourn, Attorney General, Mr. Fred A. Harrison, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The Continental Mutual Insurance Company, a mutual insurance corporation organized under the laws of Colorado, and authorized to transact business therein, sued

Jackson Cochrane, as insurance commissioner of the state of Colorado, in the Denver district court seeking to obtain a declaratory judgment determining an alleged controversy between it and the defendant claimed to arise out of the opposing legal constructions of certain provisions of its charter membership policy, form No. 6.

These controverted provisions are alleged in the complaint as follows:

"In consideration of a Two Hundred Dollar Charter Membership Fee, the payment of which is hereby acknowledged, the Insured is hereby appointed a Charter Member of the Company and, as such, shall be entitled to the Charter Membership Benefits as provided on the third page hereof."

"If, after the Company shall have received cash for the Charter Membership Fee named herein, this policy shall permanently terminate a Certificate of Membership will be issued to the Insured, if he be living, otherwise to his executors, administrators or assigns, continuing each and every Charter Membership benefit herein mentioned, the same as if this policy had not terminated."

"Within two years after discontinuing the sale of Charter Membership Policies a meeting of the policyholders of the Company will be called to consider the proposition of converting the Company into a Stock Insurance Company — hereinafter referred to as Stock Company—having the right, among other rights, to issue Health and Accident Insurance; such conversion to be by consolidation with, or reinsurance of any part or all of this Company's business in, such Stock Company. If at such meeting or any subsequent meeting of the policyholders of the Company a sufficient number, as now required by law, of the policyholders shall vote, either in person or by proxy, in favor of such conversion this Company will invest its surplus in the stock of such stock company and the stock so acquired will be distributed ratably to all Charter Membership policyholders, or their executors, administrators or assigns, who have paid their

.Charter Membership Fees. The amount of stock to be distributed hereunder shall be such a part of all of the stock so acquired as the Charter Membership Fee paid by the Insured be in proportion to the total Charter Membership Fees paid by all Charter Membership policyholders.''

''Until this Company be converted into such Stock Company, as aforesaid, this Company will in February, 1930, and in February of each year thereafter ascertain a Charter Membership Profit Fund which shall be equal to all the Company's net profits made during the calendar year immediately prior to the date the Charter Membership Profit Fund be ascertained and such a part of such Charter Membership Profit Fund shall be payable as a Charter Membership Dividend hereunder as the Charter Membership Fee named herein shall be in proportion to the aggregate Charter Membership Fees under all Charter Membership policies authorized. The number of Charter Membership policies authorized is Five Thousand, each with a Charter Membership Fee of One Hundred Dollars or an aggregate equivalent thereof in other amounts.''

It is further alleged in the complaint that said policies, having been approved by the defendant, were sold by the plaintiff to numerous persons in the state of Colorado during the year 1928; that the amount of charter membership fees contracted to be paid by the purchasers of said policy during the year 1928 were $50,350; that of this amount, $7,177.52 was paid by cash by such policyholders and of said last named amount, $4,796.77 was paid by plaintiff as commission to its agents and that plaintiff received and holds in cash the balance of said cash payments amounting to $2,380.75. Plaintiff further received notes representing the unpaid portion of said charter membership fees.

These facts were incorporated in plaintiff's 1929 annual report filed. The complaint charges that said re-

port shows plaintiff to have a surplus over and above all of its liabilities. It further avers that:

"* * * defendant, upon the filing of said report advised the plaintiff that in the opinion of the defendant, under the said Act of 1921, and other acts amendatory thereof and supplementary thereto, and under the terms of said policy, plaintiff could not lawfully expend for commissions, or for any other purpose, any part of the moneys received by it as charter membership fees from holders of said policy, but that plaintiff under said laws and said policy is obligated to retain and keep intact in trust for said charter membership policyholders the entire fund derived by plaintiff from such charter membership fee, and that defendant would act upon such opinion in the disposition which he made of said report, and would make all orders appropriate to be made under such construction of the law and of said policy; and plaintiff alleges that said construction so made by the defendant of said laws and policy is erroneous and unjustifiable, and plaintiff alleges that under said laws and policy, plaintiff is not absolutely and at all events obligated to retain and keep intact in trust for said charter membership policyholders the entire fund derived from said charter membership fee, nor to return or repay the same to said policyholders at all events, but plaintiff avers that under said laws and the terms of said policy, plaintiff is only obligated to pay to said charter membership policyholders the profits, if any, that shall accrue as provided in said policies, and to deliver to such charter members, stock of the Stock Insurance Company if and when said Stock Insurance Company is organized, as provided in said charter membership certificate, and plaintiff avers that it may lawfully use said charter membership funds for any legitimate purpose of its business, including the payment of commissions on the sale of said charter membership policy.

"That by reason of the premises a controversy exists between the plaintiff and defendant, involving the con-

struction of the statutes and the policy aforesaid; that said controversy pertains solely to the right and power of the defendant by reason of the facts hereinabove alleged to find that plaintiff has not complied with, or that plaintiff has violated, the insurance laws of the State of Colorado in such case made and provided and in the particular hereinabove set forth, and said controversy has not arisen between the plaintiff and any of its charter membership policyholders.

"Wherefore, Plaintiff prays that a judgment and decree be entered herein, declaring the rights, status and legal relations of the plaintiff and the defendant arising out of the controversy hereinabove set forth, and especially declaring proper construction of the laws of the State of Colorado hereinabove referred to and of said policy as regards the matters so in controversy between the plaintiff and the defendant; and the plaintiff specifically prays that a decree and judgment may be entered, declaring that plaintiff is not required by the laws of Colorado and the terms of said policy to keep intact and in trust for said charter membership policyholders the entire fund so derived by plaintiff from said charter membership fee, and that under said laws the plaintiff may lawfully expend said fund, or any part thereof, for any legitimate purpose of its business, including the payment of commissions upon the sale of said charter membership policies; and for such other relief as may be appropriate in the premises."

A demurrer for want of facts was interposed and sustained and the case ordered dismissed at the cost of the plaintiff. Thereafter at the request of plaintiff and with the consent of defendant, the court vacated this order of dismissal and without any further proceedings entered a decree which, after reciting the facts alleged in the complaint, provides: "That plaintiff could not lawfully expend for commissions or for any other purpose, any part of the moneys received by it as charter membership fees from holders of said policy, but that plaintiff under said

laws and said policy is obligated to retain and keep intact in trust for said charter membership policyholders the entire fund derived by plaintiff from such charter membership fee.''

Plaintiff here seeks to have this decree set aside and one favorable to its construction ordered.

■ It is to be noted that the plaintiff attempts to avoid the necessity of making its policyholders parties to the suit by alleging that ''said controversy has not arisen between the plaintiff and any of its charter membership policyholders.''

The pertinent provision of the declaratory judgments act (Session Laws 1923, c. 98) under which this action was instituted are:

''Section 2. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.''

''Section 6. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.''

''Section 11. When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. * * *''

Sections 6 and 11 of the act were under consideration in *Denver v. Land Co.*, 85 Colo. 198, 274 Pac. 743. Here the controversy grew out of a contemplated plan of the city to construct a storm sewer and assess the costs thereof upon the ''area'' basis and not the ''benefit'' plan.

The suit was declared premature because an ordinance approving the area plan had not been adopted. In such determination, the court, through Mr. Justice Campbell, states at page 201: "To pronounce a declaratory judgment in this case, when parties who favor the area plan would not be bound thereby, would be not to save costs or time. To determine here which of the two plans should be adopted by the city would or might give rise to a flood of litigation, instituted by property owners within the district not parties to this proceeding who object to the benefit plan and insist upon the adoption of the area plan. Such a proceedinng as this is unauthorized under the existing facts. Desirable as it might be to have an announcement of this court upon this question, it would be improper for us to decide it in the absence of the necessary parties. In no event should a declaration be issued until final action has been taken by the city authorities, and we do not say that even then we would entertain such an action."

This case is here controlling. Assuming, but not deciding, that a controversy within the contemplation of the act has arisen, it is obvious that the charter membership policyholders have such a substantial interest that they should have been made parties to the proceeding, and that in their absence a declaratory judgment would not terminate the uncertainty or controversy.

In such circumstances, we must refuse to affirm the declaratory judgment entered by the district court.

The judgment is reversed and the cause remanded with directions to dismiss the case at plaintiff's costs.