Argued June 2; reversed June 20; rehearing denied July 18, 1933

# CITY OF SALEM *v.* OREGON-WASHINGTON
## WATER SERVICE CO. ET AL.
### (23 P. (2d) 539)

*Chris J. Kowitz* and *William H. Trindle,* both of Salem, for appellant.

*Allan G. Carson* and *Walter E. Keyes,* both of Salem (Carson & Carson and Keyes & Page, all of Salem, on the brief), for respondents.

ROSSMAN, J. The purposes of this proceeding are to determine whether a special election held in the city of Salem December 15, 1931, was a legal election, and, if so, whether a measure approved on that day by the registered voters of that city, and which now appears as section 90 of the Salem Municipal Charter, conflicts with any legislative enactment of superior authority, or any constitutional provision. For purposes of brevity we shall hereafter refer to the enactment of December 15, 1931, as section 90. Succinctly stated, those portions of it which we deem material to this controversy authorize the city of Salem to acquire, purchase or condemn any real or personal property within or without the corporate limits of the city useful in supplying water to the city; to purchase or construct a water works system, or any part thereof, useful in supplying water to the city; to appraise the value of the plant of the defendant Oregon-Washington Water Service Company, both within and without the municipal boundaries; after appraisement to make an offer to that company for "the plants, property, and equipment of said Oregon-Washington Water Service Company used by it in furnishing and distributing water to the city of Salem and its inhabitants and others adjacent to said city, at a price determined by the common council"; if the offer is not accepted and the city still desires to acquire the plant, to condemn it; and if the plant of the Oregon-Washington

Water Service Company is not acquired, to construct a water plant for the city. Other parts of section 90 create for the city a water commission; define the manner in which the city shall charge for water service; provide that the income from the plant shall be applied (a) toward operating expenses; (b) discharge interest accruing upon bonds issued by the city for the purpose of acquiring the plant; (c) making extensions to the plant; (d) accumulating a sinking fund for the retirement of the bonds; and (e) for the payment of all bonds as they mature. Next, section 90 authorizes the city council to issue $2,500,000 bonds and employ the proceeds toward discharging the expenses of the above program. It also provides that the covenants of the bonds shall be such "that said city of Salem shall therein and thereby be held in substance and effect to undertake and promise to pay the sum therein named, together with interest thereon, as the the same becomes due and payable". Further, section 90 provides "that said common council shall, each year at the time of making the annual tax levy for city purposes, make a special levy in a sum sufficient to pay the interest due on the outstanding bonds of this issue, and to retire the principal thereof as it matures; provided, however, that such levy shall not be made when and if the income on hand derived from such water plant applicable thereto shall be sufficient to pay such interest due on such outstanding bonds of this issue, and to retire the principal thereof as it matures". We shall not now mention other parts of section 90.

The first contention urged by the respondent (water company) is that the demurrer interposed by it on the ground that there exists a defect of parties defendant is warranted by the fact that all Salem

taxpayers are not made parties defendant in this proceeding. Section 2-1411, Oregon Code 1930, provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

The necessity for making the water company a party defendant is obvious. Section 2-1411 also discloses the reason why the Attorney General was made a defendant. In addition to these parties we have two taxpayers who are mentioned in the complaint as defendants. We assume that the water company is also a taxpayer. Very likely its taxes and franchise fees constitute it one of the substantial taxpayers of Salem. But the demurrer of the respondent insists that all Salem taxpayers are necessary parties defendant. The purpose of declaratory judgment proceedings, according to section 2-1412, is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations". Section 2-1406 amplifies this statement of the purpose of the act for it plainly indicates that the aid of the courts in the administration of the act shall be to "terminate the uncertainty or controversy giving rise to the proceeding". Professor Borchard, in 45 Harvard Law Review 793, states the purposes of such legislation in the following language:

"While by no means the only function of the declaratory judgment, one of its major purposes is to afford relief from uncertainty and insecurity. The New York Court of Appeals has remarked that 'the general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation, either as to present or prospective obligations'. This function was picturesquely described some years ago by Congressman Gilbert of Kentucky: 'Under the present law you take a step in the dark and then turn on the light to see if you stepped into a hole. Under the declaratory judgment law you turn on the light and then take a step' ''.

The act itself proclaims its purpose as being remedial and enjoins upon the courts a duty to construe and administer its provisions liberally. The courts have not hesitated to assume the discretionary power vested in them by the act and have given full effect to it. 28 Yale Law Journal 105.

When this suit was instituted the following were named parties defendant: "Oregon-Washington Water Service Company, a corporation, and all persons whomsoever who have or claim to have any interest which would be affected by the declaratory decree prayed for in this complaint." The defendants Hurd and D'Arcy were made defendants after a demurrer filed by the water company suggested the necessity of making them defendants on the theory that they, being taxpayers, had an interest in this controversy. It is thus apparent that the city alleges that it has a controversy with the water company, and, under the supposition that Hurd and D'Arcy have an interest in that controversy, added their names as parties defendant.

Let us now determine whether the complaint discloses a necessity for naming any taxpayers as parties defendant. It is at once apparent that the controversy

between the water company and the city is different from that between the city and those who own property within its boundaries. If the city's right to condemn the property of the water company is sustained in this proceeding and the city subsequently exercises that right the water company, as an operating unit, will thereby cease to exist. Moreover, the water company will have to accept as payment for its plant whatever the court may award. It may be that every taxpayer in the city favors such a course of action. Nothing to the contrary is disclosed by the record. If they do, they have no controversy with the plaintiff and it would be useless to add them as parties defendant. The taxpayers will be directly affected only in the event that a tax is levied for the benefit of the water plant. The respondent, in support of its argument that every Salem taxpayer should have been made a party defendant, directs our attention to: *Morton v. Pacific Construction Co.,* 36 Ariz. 97 (283 P. 281); *Denver v. Denver Land Co.,* 85 Colo. 198 (274 P. 743); *Petition of Kariher,* 284 Pa. 455 (131 Atl. 265); *Ezzell v. Exall,* 207 Ky. 615 (269 S. W. 752); *Jefferson County ex rel. Coleman v. Chilton,* 236 Ky. 614 (33 S. W. (2d) 601); *Continental Mutual Insurance Co. v. Cochrane,* 89 Colo. 462 (4 P. (2d) 308); *Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace,* 288 U. S. 249 (53 S. Ct. 345).

In *Morton v. Pacific Const. Co.,* supra, the court was requested under the Arizona Declaratory Judgments Act to determine the validity of a street paving contract to which the plaintiff was a party. The complaint alleged: "The defendant Hattie L. Mosher, aided and abetted by certain of the other defendants, and by certain other persons who are owners of property in the district proposed to be assessed, but are nonresidents of the state of Arizona", questioned the

validity of plaintiff's contract and of the resolutions of the city commission which authorized the improvement. The defendant demurred on the ground of a defect of parties defendant, and contended that the above-quoted paragraph of the complaint itself indicated the necessity of bringing in the nonresidents before the controversy could be terminated. The court sustained that view. In *Denver v. Denver Land Co.,* supra, the facts were that the city of Denver contemplated the construction of a storm sewer, the creation of a storm sewer district, and the assessment of the cost of the improvement upon all of the real property within the district. This plan was under contemplation and in a preliminary stage of development but no ordinance to put it into effect had been enacted or even drafted. At this stage of the program the plaintiffs, owners of property in the proposed district, brought this proceeding to obtain a declaratory judgment concerning the validity of a contemplated ordinance, which, as we have seen, had not then been either adopted or drafted. The plaintiffs favored a scheme of assessment known as the "benefit" plan, but it appeared that others advocated the "area" plan. The plaintiffs desired the court to pronounce their plan valid. None of the property owners who favored the area plan was made a party. Besides indicating very strongly that the above situation was a mere disagreement between those interested in the proposed project rather than a controversy, as that word is employed in the Declaratory Judgments Act, the court expressed the opinion that no declaration of rights should be pronounced in the absence of the property owners who favored the competing plan.

It will be observed that in both of the cases just reviewed a declaration was sought concerning public matters, and that in both special assessments were in-

volved. In the third case cited by the respondent, *Petition of Kariher,* supra, which brought before the court a controversy concerning the title to a parcel of real property, the court defined the word "controversy" and in so doing stated in a general sort of way the necessity of bringing into court all those who will be affected by the decree so that the judgment rendered will become res adjudicata as to them, but otherwise did not mention the problem which confronts us. In *Ezzell v. Exall,* supra, it appeared that Exall had agreed to convey to Ezzell 19/20ths of a 10-acre tract of land. The other 1/20th was owned by Dorothy Cushman, if alive, otherwise by her heirs. If Dorothy Cushman was alive her whereabouts was unknown, and if she was dead the whereabouts of her heirs was unknown. The contract bound Exall to institute an action for the partition of the land and then to convey to Ezzell the title to a 19/20ths interest. He brought this declaratory judgment proceeding to have the court declare whether a judgment of partition obtained on constructive service on Dorothy Cushman or her heirs would be binding on those thus served. The court held: "It is at once apparent that either her rights, or the rights of her unknown heirs, would be affected by the declaration, and as none of them was before the court, and a decision of the question would not terminate the controversy" the court should have declined to declare the rights of the parties. In *Jefferson County ex rel. v. Chilton,* and in *Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace,* being, respectively, the fifth and seventh cases cited by respondent, we find nothing of any material assistance in the solution of our problem. In *Continental Mutual Ins. Co. v. Cochrane,* supra, the parties were the insurance company and the state insurance commissioner. The company sought a

declaratory judgment construing its policies in such a manner that it could pay commissions out of premiums collected from its policyholders. The court felt that it was obvious that the policyholders had such a substantial interest in the matter that no adjudication should be pronounced in their absence.

Summarizing briefly the holding of those of the above decisions which determined the problem of necessary parties, the following observations, we believe, are warranted. In *Morton v. Pacific Const. Co.*, the complaint itself averred that all interested parties were not before the court and that a decision would not settle the controversy because others, acting in collusion with the defendant, were not before the court. In *Denver v. Denver Land Co.*, the plaintiffs prayed that the court declare their plan for making assessments valid, but failed to bring in those who were opposed to their plan and who favored competing plans. In *Ezzell v. Exall* the plaintiff had bound himself by contract to institute a partition suit against a party or parties whom he did not know were alive or dead, and prayed that the court declare that substituted service in the contemplated partition suit would be valid. Here again the plaintiff failed to bring before the court the adverse party. In *Continental Mutual Ins. Co. v. Cochrane*, the plaintiff sought a decree authorizing it to expend moneys contributed by its policyholders for operating expenses, but failed to bring in the policyholders. It will be observed that in the last three of these cases the plaintiff alleged the existence of a controversy, but failed to bring before the court the other party to the controversy. In the first of the four cases the plaintiff brought before the court one of its antagonists, but averred that there were others equally antagonistic and acting in conjunction with that one.

Let us now examine the authorities cited by the plaintiff. They are: *In re Kariher's Petition,* supra; *City of Muskegon Heights v. Danigelis,* 253 Mich. 260 (235 N. W. 83, 73 A. L. R. 696) ; *Town Board of Greece v. Murray,* 130 Misc. 55 (223 N. Y. S. 606) ; *Colorado & Utah Coal Co. v. Walter,* 75 Colo. 489 (226 P. 864) ; *Washington-Detroit Theatre Co. v. Moore,* 249 Mich. 673 (229 N. W. 618, 68 A. L. R. 105) ; *Russian Commercial & Industrial Bank v. British Bank,* 90 L. J. K. B. (N. S.) 1089 (19 A. L. R. 1101) ; *In re Cryan's Estate,* 301 Pa. 386 (152 Atl. 675, 71 A. L. R. 1423).

We have already discussed *In re Kariher's Petition.* The city's brief mentions that decision only for general reference purposes. In *Muskegon Heights v. Danigelis* the city council of Muskegon Heights enacted a resolution authorizing the sale of $25,000 of municipal bonds. The successful bidder declined to take the bonds because the validity of the council proceedings had been questioned. The city thereupon instituted declaratory judgment proceedings under the Michigan act (not the Uniform Act) for the purpose of securing a declaration of the rights of the parties and, according to the decision, "summoned two principal taxpayers to reply and present issuable questions. Issues of fact were presented, evidence taken, points of law raised and the court found the bonds valid". The taxpayers appealed. Apparently no contention was presented concerning necessary parties. However, the court held that the issue revealed a controversy of the kind that the city was entitled to have adjudicated, and declared: "If the act is to serve at all, it must be permitted to serve in this instance." The lower court's decree was affirmed. *Town Board of Greece v. Murray* was a proceeding under the New York Practice Act (similar to our Declaratory Judgments Act) to obtain a declara-

tion of the rights of many persons under a public improvement contract. Any declaration of rights necessarily affected the rights of those who lived within the improvement district because the amount found due to the contractor and subcontractors would, in turn, be assessed against the property constituting the district. No demurrer suggesting the absence of necessary parties was interposed. The court, in sustaining the propriety of the proceeding, took occasion to declare the proceeding well adapted to the needs of the situation. In *Colorado Coal Co. v. Walter,* the plaintiff was the owner of a tract of land upon which there arose a body of water. Somehow he increased the flow of water and thereupon the defendant asserted a right to some of it, and instituted a suit to establish his claim. At this point the plaintiff brought a declaratory judgment proceeding to determine the rights of the parties. We now quote from the decision:

"Defendant says the Declaratory Judgments Act is not applicable, and the trial court was without jurisdiction, because owners of adjudicated priorities on the Yampa river were not made parties and hence no judgment herein can terminate this controversy. But if, as alleged in the complaint, the waters in question never became any part of the Yampa, appropriators from that stream are not concerned in the litigation. The controversy is between plaintiff and defendant and a judgment herein will terminate it."

The last three of the cases cited by the city bear so remotely upon the problem awaiting our decision that we shall not pause to review them. The British case indicates that a plaintiff seeking a declaratory judgment is entitled to have the court assume jurisdiction when he brings before it a "controverter". The Michigan and Pennsylvania cases reflect light upon our problem only in so far as their definitions of "contro-

versy'' indicate that the court should assume jurisdiction whenever its decision will render practical help in ending the controversy.

The respondent argues that the decision in *Colorado etc. Co. v. Walter* is of no consequence in our present cause because the Colorado court dismissed the objection offered by the defendant suggesting insufficient parties by referring to the pleadings of the plaintiff wherein the latter had alleged that the disputed water never became a part of the Yampa river. But the significant point is that the court accepted the plaintiff's version of the controversy and rejected that of the defendant. Apparently it was convinced that a declaration of the rights of the parties to the controversy described in the complaint would serve the cause of justice in a practicable manner.

We have been unable to find in any of the decisions a holding that in a declaratory judgment proceeding concerning a controversy of the kind before us every taxpayer must be made a party. None of the courts has held that the phrase ''interest which would be affected by the declaration'' means financial interest. The decisions undoubtedly hold that the participants in the controversy must be made parties. To hold that every taxpayer must be made a defendant would defeat the purpose of the Declaratory Judgments Act which seeks to prevent a minor controversy from expanding until it has gathered to itself a large number of antagonists. If we should sustain the water company's demurrer we would thereby compel every taxpayer in the city to become a participant in the controversy between the city and the water company. Thus the above purpose of the act would be defeated. Ordinarily a suit or action cannot be maintained until all three of the following elements are present: (a) a duty owing by the defendant

to the plaintiff; (b) a breach of that duty; and (c) damages sustained by the plaintiff as a result of the breach. The Declaratory Judgments Act dispenses with the two elements last mentioned and is satisfied if controversy exists concerning the first. It is our belief that the word "interest" refers to the subject-matter of the controversy, and that the requirement is satisfied when the plaintiff has brought before the court those who are participants therein. Let us now revert to the facts and determine whether there is before the court all of those who are participants in the controversy as disclosed by the complaint and the demurrer. The complaint clearly alleges a controversy between the city and the water company. Its only reference to Hurd and D'Arcy is that they "contend and assert" the invalidity of section 90. In this day of countless laws a mere charge that someone "contends and asserts" the invalidity of a particular law, ordinance or charter amendment surely does not confer jurisdiction upon the courts to summons him in so as to end the controversy. If we were to take the opposite view the courts would find themselves engulfed in a mass of litigation involving every citizen in the state. In *Petition of Kariher,* supra, the Pennsylvania court declared that "jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exists between the parties". See also *In re Cryan's Estate,* 301 Pa. 386 (152 Atl. 675, 71 A. L. R. 1417). We are clearly satisfied that the circuit court did not err when it sustained the demurrer of Hurd and D'Arcy. In 45 Harvard Law Review at pages 839 to 855, a writer reviews a large number of decisions (all of which we have read) wherein declaratory judgments acts have been applied in the settlement of controversies concerning

bond issues, contracts made by public bodies, the validity of laws, ordinances, etc. While it is true that in none of them a demurrer was interposed suggesting the necessity of naming as parties all of the taxpayers, nevertheless it is significant that all of the controversies adjudicated in those decisions affected the interest of the taxpayers as much as does the controversy before us, and that none of the courts declined to pronounce a declaration. We are satisified that in the settlement of the controversy between the city and water company the taxpayers are not necessary parties. Of course, any declaration of rights announced in this proceeding will not become res adjudicata as to them. It will, however, become a precedent and as such will exert the effect that the doctrine of stare decisis, et non quieta movere yields to it in any ensuing litigation by whomsoever begun.

Respondent next contends that the courts of this state ought not undertake to grant relief in this proceeding because a suit is pending between the city of Salem and the respondent in United States District Court for Oregon, involving the validity of section 90 of the charter. The only information which we have upon this subject is imparted by the following averment of the complaint:

"Since the filing of the original complaint herein, the defendant Oregon-Washington Water Service Company has caused a complaint to be filed in the United States District Court for the district of Oregon in which said complaint the said defendant Oregon-Washington Water Service Company has named the city of Salem and its several city officials defendants, and said Oregon-Washington Water Service Company alleges in said complaint that said Section 90 of the charter hereinbefore designated is unconstitutional, null and void and was illegally adopted in the following particulars:  *    *    *''

Here follows an enumeration of the contentions of the water company. We deem it unnecessary to quote this part of the complaint because, as we proceed, we shall mention every contention argued in the water company's brief. The pleadings do not disclose what, if anything, has occurred in the suit in the federal court since the filing of the complaint. It seems well to mention at this point that the water company nowhere contends that any right protected by the federal constitution is involved in this suit. Ordinarily when a state and a federal court have concurrent jurisdiction over the parties, or those in privity with them, and over the same subject-matter, the court which first acquired jurisdiction retains it and will be left to determine the controversy. 15 C. J., Courts, p. 1161, § 637; 7 R. C. L., Courts, p. 1068, § 106. We are especially persuaded that we ought to invoke this rule in the present instance because the proceeding involves nothing but the construction of our state statutes and the municipal charter. The federal court would deem itself bound by the construction placed by this court upon these enactments. *Fischer v. City of St. Louis,* 194 U. S. 361 (48 L. Ed. 1018, 24 S. Ct. 673); *Mackay Teleg. & Cable Co. v. City of Little Rock,* 250 U. S. 94 (63 L. Ed. 863, 39 S. Ct. 428). (For further citations of authorities see 25 C. J. Federal Courts, p. 943, § 303, p. 839, § 173, p. 832. § 171). The efforts of the city to acquire a municipally-owned water system have met with much delay (*Henderson v. City of Salem,* 137 Or. 541 (1 P. (2d) 128, 4 P. (2d) 321)). This circumstance is further reason suggesting propriety upon our part of retaining jurisdiction so that an early decision may be announced. We find no foundation in this contention for refraining from pronouncing a conclusion.

The respondent next contends that the published notice informing the Salem voters of the special elec-

tion held December 15, 1931, at which a vote was taken upon this measure, was insufficient. Ordinance No. 2826 of the city of Salem which made provision for the special election of December 15, 1931, and which submitted the present measure to the voters at that election, directs the city recorder to "publish a notice of the election herein called by causing a copy of the said notice to be posted * * *". The following is a copy of the notice which the recorder posted and published:

"Notice of Special Election, In the City of Salem, Oregon, Tuesday, December 15, 1931. Notice is hereby given that on Tuesday, December 15, 1931, at the polling place in each of the several wards in the city of Salem, county of Marion, state of Oregon, and the whole thereof, a special election will be held pursuant to the provisons of Ordinance No. 2826, entitled: 'An Ordinance calling a special election to be held in the city of Salem, Oregon, on December 15, 1931, for the purpose of submitting to the qualified electors of the city of Salem, a certain amendment to the charter of the city of Salem, initiated by the common council of said city, consisting of a new section to be added to the charter providing for the acquisition by the city of Salem of a municipal water system, and for the submission to said electors of any other measure or matter which the common council of the city of Salem, Oregon, may desire to initiate or submit, or which measure may be initiated by the legal voters of said city, and providing an emergency, passed and adopted by the common council of the city of Salem, Oregon, on the 2nd day of November, 1931, and approved by the mayor on the 3rd day of November, 1931, at which said election there will be submitted under the terms of said ordinance an amendment to the charter of the city of Salem to be known as Section 90, initiated by the common council, authorizing the purchase of a municipally owned water system, and the issuing of bonds in amount not to exceed two million five hundred thousand dollars ($2,-500,000), to pay for such system, and the operation

thereof thereafter by a board of water commissioners. Also providing for the submission of an advisory measure for the purpose of determining the choice of the legal voters of Salem as to a source for supplying the city's municipally owned water plant with water if acquired or constructed."

Criticizing this notice, the respondent argues that, although section 90 confers upon the city authority to purchase or construct a water plant, the notice mentions only the authority to purchase. Since the election of December 15 was a special election, all statutory requirements providing for the giving of notice were mandatory. *Hill v. Hartzell,* 121 Or. 4 (252 P. 552); *Staples v. Astoria,* 81 Or. 99 (158 P. 518). The parties agree that a notice, in order to be valid, must specify the time, place and purpose of the election. A notice which omits mention of one of these items is invalid. *Palmberg v. Astoria,* 63 Or. 222 (127 P. 32); *State ex rel. v. Port of Bay Ocean,* 65 Or. 506 (133 P. 85); *Brown v. Carl,* 111 Iowa 608 (82 N. W. 1033). However, as is stated in 9 R. C. L., Elections, p. 991, § 14, quoted with approval in *Staples v. Astoria,* supra, substantial compliance with legislative requirements as to the giving of notice suffices. See also *McLaughlin v. City of Newtown,* 189 Iowa 556 (178 N. W. 540). In the present instance the matter submitted to the voters for their decision was whether the city should acquire a water plant. The portion of the notice which states this proposition is not subject to criticism. The issue whether the city should buy or construct the plant was incidental or collateral. But the authority conferred upon the officials to determine the alternative is also mentioned in the notice in connection with the word "choice". It is true that the word "constructed" does not occur until the advisory measure is reached, but

both measures pertain to the proposed legislation concerning the water plant, and the average prospective voter, in reading the notice, would pass from the one to the other without being aware that they were separate measures. We believe, therefore, that in determining the sufficiency of this notice the document should be read as an entirety. Further, the sufficiency of the notice ought to be construed in connection with the general information concerning the election possessed by the voters. December 2, 1931, as appears from the complaint, there was mailed to each registered voter, pursuant to law, a pamphlet containing a full copy of the measure to be submitted at the election. Thus there was in his possession a copy of the measure mentioned in the notice when he perused the latter. We also know from our own records (*Henderson v. City of Salem,* 137 Or. 541 (1 P. (2d) 128, 4 P. (2d) 321)) that on May 16, 1930, the voters of Salem passed upon a proposal to acquire a municipally-owned water plant, and that litigation ensued which was finally disposed of by a decision of this court October 13, 1931, when a petition for a rehearing was denied. The previous election and the ensuing litigation created much public interest in the proposal to acquire a municipally-owned water plant, as is evidenced by the following statement made by counsel for respondent during oral argument: ''It was in the newspapers' hotly conducted campaign  *  *  * the newspapers carried long editorials  *  *  *.'' This circumstance, together with the fact that the aforementioned pamphlet was mailed to all registered voters, we believe, may properly be considered in determining the sufficiency of the above-quoted notice. We are satisfied that it sufficiently stated time, place and purpose.

The respondent next contends that the ordinance calling the special election submitted to the voters a

dual proposition in single form and that, therefore, section 90 is invalid. It refers to the fact that section 90 authorizes the city council to purchase or construct a water plant. As stated before, we believe that the proposition submitted was not a dual, but a single one, that is, municipal ownership. Our conclusion is supported by the following authorities: *Albuquerque v. Water Supply Co.*, 24 N. M. 368 (174 P. 217, 5 A. L. R. 519) (annotated); *Henderson v. Shreveport*, 137 La. 667 (69 So. 88, 5 A. L. R. 516); *C. B. Nash Co. v. City of Council Bluffs*, 174 Fed. 182; *Hurd v. City of Fairbury*, 87 Neb. 745 (128 N. W. 638); *Noonan v. Seaside*, 97 Or. 64 (191 P. 651). This court, in *Noonan v. Seaside*, supra, recognized as valid a measure adopted by a popular vote, but subject to the same criticism which we are now considering. See also *City of Eugene v. Willamette Valley Co.*, 52 Or. 490 (97 P. 817). The weight of authority supports the view that a proposition to acquire, but conferring an incidental discretion upon officials to purchase or construct, violates no rules forbidding the submission of dual propositions. McQuillin, Municipal Corporations (2d Ed.), § 2357 and annotation, 5 A. L. R. 759. The carefully prepared decision of *Beers v. City of Watertown*, 43 S. D. 14 (177 N. W. 502), states well the minority view. *Julson v. City of Sioux Falls*, 48 S. D. 452 (205 N. W. 43). We find no merit in this contention.

Next, the respondent argues that section 90 is invalid because two-thirds of those who voted at the special election December 15, 1931, did not cast ballots in favor of it. The vote was 2,265 for and 1,661 against the adoption of the measure. In support of this contention it relies upon Article XI, § 5, Oregon Constitution, and § 6, subdivision 6, and § 23 of the 1903 Salem legislative charter (see 1903 special laws, pages 337

and 359). Article XI, § 5, Oregon Constitution, provides: "Acts of legislative assembly incorporating towns and cities shall restrict their powers of taxation, borrowing money, contracting debts and loaning their credit." Section 6, subdivision 6 of the 1903 charter prescribes a specific plan whereby the city council may submit to the voters a proposition for the acquisition of a municipal water plant, and incur a debt on the part of the city incidental thereto. It authorizes the council to contract for the purchase of a plant and issue bonds as a means of securing the funds with which to defray the cost on condition that the council first submit the proposition to the voters. Prior to doing so the council is required to make investigations and conduct preliminary negotiations. Next, section 6 provides:

"At least two-thirds of the electors voting thereon at such election shall be necessary to secure such acquisition and to warrant the issuance of municipal bonds therefor."

Section 23 provides:

"The common council shall not in any manner create any debt or liability, provided * * * the council may call an election to determine whether the city shall incur an indebtedness to meet such an emergency or calamity or the acquisition of a public utility; and upon two-thirds of those persons who are qualified voters of, and who pay taxes on property within, said city voting at said election being in favor of authorizing the council to incur the proposed indebtedness, they may then contract the same; but said indebtedness shall not exceed the sum of $20,000, except as provided in subdivision 6 of § 6 of this charter * * *".

It is obvious that these two provisions of the charter regulate the manner of municipal action by the process of ordinance, and that they do not have any bearing upon amending the charter. If section 90 was an ordinance and not a charter amendment these two charter

provisions would be material. However, since section 90 and section 6, subdivision 6, and section 23 deal with the same subject-matter, the more recent enactment supersedes the earlier. The older is repealed by implication and yields to the later provision. *Phipps v. Medford,* 81 Or. 119 (156 P. 787, 158 P. 666); *Strickland v. Geide,* 31 Or. 373 (49 P. 982). That is, the repeal has been accomplished unless Article XI, § 5, Oregon Constitution, above quoted, requires legislative action to release the city from these two sections of its charter. Article XI, § 5, Oregon Constitution, was a part of that instrument upon its adoption in 1857. Article XI, § 2, Oregon Constitution (the home rule amendment), was adopted in 1906. As amplified by the 1910 amendment, it reads:

"The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon."

In *Noonan v. Seaside,* 97 Or. 64 (191 P. 651), referring to the home rule amendment, we held:

"What the legislature of the state could formally enact as to matters which pertain strictly to municipal affairs, or to intramural transactions, the electors of a city, in a proceeding in conformity with the constitution and statutes enabling the same, may now enact, subject to the constitution and general laws of the state."

Article IV, § 1a, Oregon Constitution, provides:

"The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective mu-

nicipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising initiative and referendum powers as to their municipal legislation."

Article IV, § 1, Oregon Constitution, provides:

"Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon."

Section 36-2010, Oregon Code 1930, provides that any measure submitted to a vote of the people under the initiative or referendum shall become a law when a majority of those voting upon the measure shall have approved it, and further, that

"It shall be the duty of the appropriate city or town officer to proceed within 30 days after the election, and sooner if the returns be all received, to canvass the vote given for each proposed charter amendment, measure or question as by the charter or ordinances of his city or town provided, and to proclaim which is paramount in the manner provided by said charter or ordinance provisions."

Ordinance 1464 of the city of Salem provides the manner of exercising the initiative and referendum by the voters of that city. It provides that a majority vote shall enact into law any measure submitted to the voters. We thus see that the home rule amendment confers upon the voters of the municipalities the power to enact or amend their charters; that the section of the constitution reserving to the people the initiative and referendum powers reserves this same power to the voters of all municipalities; that the same clause provides that the municipalities may prescribe the manner in which the municipal voters shall exercise the initiative and referendum powers; that the city of Salem

has enacted an ordinance delineating the means whereby the voters of that city may exercise those powers and that the voters, in the manner prescribed by that ordinance, amended their charter by adding to it section 90. We believe that it follows that section 90 has superseded, and, by implication, repealed section 6, subdivision 6, and section 23. *State ex rel. v. Portland,* 65 Or. 273 (133 P. 62).

Respondent next contends that section 90 purports to grant the city extramural powers and is, therefore, void. Section 90 authorizes the city council to make an offer of purchase for the plant of the respondent. It confers power upon the city "to purchase all the plant property and equipment of said Oregon-Washington Water Service Company used by it in furnishing and distributing water to the city of Salem and its inhabitants and others adjacent to said city". It also authorizes the city to acquire water rights "either within or without the corporate limits of the city of Salem". Another portion provides that the city, upon acquisition of a plant, shall have authority to supply water not only to the city's inhabitants but also to those "living along the supply line or in the vicinity of said water system, without the city limits". We assume that it is not the purpose of these charter provisions to thrust the city into an extensive water business outside of its boundaries but only to enable it to dispose of its excess supply. Section 56-2401, Oregon Code 1930, provides:

"Incorporated cities and towns, when the power to do so is conferred by or contained in their charter or act of incorporation, are hereby authorized to build, own, operate and maintain water works * * * within and without the boundaries of said corporation, for the benefit and use of the inhabitants thereof, and for

profit and to that end may in connection with their water system sell and dispose of their water for irrigation and other purposes to people residing without the boundaries of such municipal corporation. * * * For the purpose of exercising such powers such cities and towns are conferred with the power and authority to bring actions for the condemnation or taking of private property for public use in the same manner as private corporations are now authorized or permitted to do under the laws of the state.''

Section 56-2501, Oregon Code 1930, provides:

''Any incorporated city or town, within the state of Oregon, owning, controlling or operating a system of water works * * * for supplying water * * * for its inhabitants * * * shall have the right * * * to sell, supply and dispose of water * * * from such system to any person, persons, or corporation within or without the limits of such incorporated city or town * * * and to make contracts in reference to the sale and disposal of water * * * for use within or without the corporate limits.''

The validity of these statutes has been affirmed. *Yamhill Elec. Co. v. McMinnville*, 130 Or. 309 (274 P. 118, 280 P. 504); *Churchill v. Grants Pass*, 70 Or. 283 (141 P. 164). See also *Sherred v. Baker*, 63 Or. 28 (125 P. 826). They do not of themselves amend municipal charters, but merely constitute an offer by the state to any municipality which desires to avail itself of these extramural powers. The municipality avails itself of the powers by amending its charter in such a way as to accept the offer. *Riggs v. Grants Pass*, 66 Or. 266 (134 P. 776), and *State v. Port of Astoria*, 79 Or. 1 (154 P. 399). It is evident from the foregoing that by the enactment of section 90 the city did not confer upon itself extramural power for it could not do so, but merely accepted the offer of such power sub-

mitted to it in the above two sections of our laws. Respondent argues that the language above quoted shows that its plant is rendering a public service to consumers residing outside of the municipal boundaries, that acquisition of its plant by the city would launch the city in a public service enterprise, and that the city has no power to engage in such a venture. It does not clearly appear to what extent the respondent is serving water to consumers outside of the municipal boundaries, but we feel justified in assuming that the number is small, and that the situation is similar to those described in *Croyle v. Johnstown Water Co.*, 259 Pa. 484 (103 Atl. 203), and *Slingerland v. Newark*, 54 N. J. Law 62 (63 Atl. 129), where the court held that the city could properly sell its excess supply in adjacent territory. It is clear that if the city makes the purchase of the water company's plant it will be compelled to continue the outside service. We believe that section 90 and the two statutes cited in the previous paragraph confer upon the city sufficient power to do so. *Yamhill Elec. Co. v. McMinnville,* supra; *Richards v. City of Portland,* 121 Or. 340 (255 P. 326); McQuillin, Municipal Corporations (2d Ed.) § 1620 and § 1622; *South Pasadena v. Pasadena Land & Water Co.,* 152 Cal. 579 (93 P. 490); *Omaha Water Co. v. Omaha,* 162 Fed. 225 (15 Ann. Cas. 498); *Long Island Water Supply Co. v. Brooklyn,* 166 U. S. 685 (17 S. Ct. 718, 41 L. Ed. 1165).

Finally, the respondent contends that section 90 is invalid "because the amendment was not initiated by the voters but was commenced by ordinance of the city council". Section 90 was submitted to the Salem voters in the following manner: November 2, 1931, the council enacted ordinances Nos. 2824 and 2826. The latter of these called the special election of December 15, 1931,

and the former submitted to the voters, for their approval or rejection at that election, the measure which is now section 90. Respondent contends that the method pursued by the city council was not authorized by either the home rule amendment to our constitution (Art. XI, § 2) or by the provision reserving to the people the initiative and referendum power (Art. IV, §§ 1 and 1a). It further contends that the council's method was not authorized by section 36-2015, Oregon Code 1930, which provides:

"Amendments to any city charter may be proposed and submitted to the people by the city council, with or without an initiative petition, but the same shall be filed with the city clerk for submission not less than sixty days before the election at which they are to be voted upon, and no amendment of a city charter shall be effective until it is approved by a majority of the votes cast thereon by the people of the city or town to which it applies. The city council may by ordinance order special elections to vote on municipal measures."

This provision does not reveal section 90 as a valid enactment because it was not filed with the city clerk sixty days before the election of December 15, 1931. We have already reviewed the home rule amendment and the constitutional provisions reserving to the people the initiative and referendum powers. We have also taken note of the enactments of the Salem city council (Ordinance No. 1464) providing a means whereby the initiative powers may be exercised by the Salem city voters. Section 10 of Ordinance No. 1464 provides:

"Whenever the common council of the city of Salem, Oregon, shall deem it expedient to submit to the legal voters of said city any municipal measure or amendment to the city charter, such common council

shall declare the same by ordinance at least thirty days before an election, at which such measure or amendment is to be voted upon.''

In *McKenna v. City of Portland,* 52 Or. 191 (96 P. 552), this court discussed the validity of the process of charter amendment pursued in the present instance by the city of Salem. We quote from that decision:

"The amendment in question was proposed by the council, and by resolution of that body submitted to the people for adoption or rejection, without a petition from the voters to do so. Plaintiff claims that the council had no power or authority to initiate or submit an amendment to the charter on its own motion, and therefore the alleged amendment is void, and of no effect.''

The decision, after taking note of the home rule amendment, the initiative and referendum clauses of our constitution, the provisions of 1907 Session Laws, chapter 226, section 12 (now § 36-2015, Oregon Code 1930), and of the fact that the directions of that section of our laws were pursued in the initiation of the charter amendment, declared:

"Thus construing them, Section 2, Article XI, is silent as to the method of exercising the powers granted by it to the voters of municipalities, while Section 1a authorizes the matter to be regulated by general laws, except that cities and towns may provide for the manner of exercising such powers as to their municipal legislation, the clear meaning of which, it seems to us, is that general legislation upon the subject will prevail, unless the city has exercised the powers given it by the constitution and enacted some conflicting local legislation in reference to the matter. Since it does not appear in this case that there is any legislation of the city of Portland conflicting with the provisions of the general law regulating the method and manner of submitting

to the people amendments to the city charter, we are of the opinion that the present amendment was properly submitted.''

In *Kiernan v. Portland,* 57 Or. 454 (111 P. 379, 112 P. 402, 37 L. R. A. (N. S.) 339), an ordinance of Portland making provision for submission to the voters of charter amendments by resolution of the common council was approved. In *State v. Andresen,* 75 Or. 509 (147 P. 526), this court sustained the validity of an amendment to the charter of Oregon City initiated by a resolution of the common council pursuant to an ordinance of that city delineating the method whereby the initiative and referendum could be exercised in that city. In *Pearce v. Roseburg,* 77 Or. 195 (150 P. 855), and *Curtis v. Tillamook City,* 88 Or. 443 (171 P. 574, 172 P. 122), charter amendments initiated by resolution of the city council and subsequently adopted by popular vote were declared legally enacted. We have taken careful note of respondent's criticism of these decisions which suggests that they display confused reasoning. They have, however, established a practice of charter amendment, frequently employed, whereby large undertakings were authorized, including bond issues. These undertakings have since been completed and the bonds are now in the possession of those who parted with their funds in making the purchase. These circumstances caution us to look for substantial reasons before considering a change. We have found none, and are satisfied that the above decisions are based upon proper reasoning. We conclude that Ordinance No. 1464 is a valid enactment, and that section 90 was submitted to the voters in a lawful manner.

The above disposes of every contention suggested by the respondent. It follows that, in our opinion,

section 90 is a valid part of the Salem city charter. February 1, 1932, so the complaint alleges, the city council enacted Ordinance No. 2839 providing for the sale of $20,000 of water bonds to defray the expenses of proceeding with the task of acquiring a water plant. It follows from the above that, in our opinion, this enactment is valid.

The city is entitled to a decree in harmony with the above against the respondent and the attorney general. The cause will be remanded to the circuit court with instructions to enter the decree.

CAMPBELL, J., concurs.

BAILEY, J., concurs in the result.

RAND, C. J., and BEAN, J., did not participate in this decision.

———————

KELLY, J. (dissenting). Inter alia, section 2-1411, Oregon Code 1930, provides that:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, * * *"

Under the charter amendment in suit, the issuance and sale of negotiable coupon bonds of the city of Salem are authorized. The amendment also specifically provides:

"(F) That said common council shall, each year at the time of making the annual tax levy for city purposes, make a special levy in a sum sufficient to pay the interest due on the outstanding bonds of this issue, and to retire the principal thereof as it matures; * * *"

The declaration sought by this proceeding is that this charter amendment was regularly and legally

adopted by the voters of the city of Salem, and that it is now a valid and subsisting amendment to the charter of the city of Salem in full force and effect.

In my opinion, every taxpayer of Salem, resident and nonresident, has an interest which will be affected by that declaration. The provision in the amendment "that such tax levy shall not be made when and if the income on hand derived from such water plant applicable thereto shall be sufficient to pay such interest due on such outstanding bonds of this issue and to retire the principal thereof as it matures", in my opinion, does not deprive the taxpayers of their interest nor render those interests unaffected by the amendment. It only imposes a condition which may at some time avoid the necessity of a levy for that particular year. Moreover, this condition emphasizes rather than abates the obvious fact that every taxpayer's interest is to be affected by the character of the water plant to be acquired, its capacity and its efficiency. In a large measure, those factors will be determinative of its income producing power which in turn determines whether the special tax levies so authorized shall be few or many.

As I read the cases cited and reviewed, in every one of them, where this question has been directly presented, as in the case at bar, it has been held that taxpayers thus treated are affected by the proposed declaration and are necessary parties.

It is well stated in the opinion of the court that any declaration of rights announced in this proceeding will not become res adjudicata as to the taxpayers. In my opinion, therefore, in the present state of the record nothing will be settled and no relief from uncertainty and insecurity afforded by the declaration herein.

Section 2-1406, Oregon Code 1930, provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

While the word "may", in the foregoing section is not necessarily to be construed as meaning must, in my opinion, wisdom points that way.

With the greatest deference to the opinion of the court and my learned and able brother, who wrote it, I am unable to say that where the validity of a measure is involved proposing a tax, the extent and frequency of which are to be determined by the earning power of a municipal water plant, the taxpayers' interests are unaffected by the acquisition of a particular plant when there is an alternative course available with respect to securing such water service.

In the opinion of the court, it is indicated that only where there is a controversy, is declaratory relief proper and that the record does not disclose that any other than the water company and the city are parties to any controversy; and yet the record discloses that at the election purporting to have adopted the amendment in suit there were 1661 negative votes. It is a reasonable deduction that some of those negative votes were cast by taxpayers of Salem. There is certainly nothing in the record tending to show that these negative voters now are any less controversial than when they cast their ballots.

I think that the purpose of the declaratory judgment statute is to afford a means to terminate uncertainty or controversy and prevent extended litigation. Only when such purpose may be served should a de-

claratory judgment or decree be rendered. Taking the course approved by the opinion herein, as I view it, merely adds one more to the series of suits and appeals available to the parties hereto without affording anything further than an expression of what this court now thinks ought to be done. It may be good counsel, but certainly it does not rise to the dignity of an adjudication.

It is stated in the opinion that, although the declaration therein made is not res adjudicata as to taxpayers, it will, nevertheless become a precedent, and, as such, will exert the effect that the doctrine of stare decisis yields to it in any ensuing litigation by whomsoever begun.

As to the taxpayers, in my opinion, this is a substitution of the supposed potency of a well-established doctrine for compliance with a statutory jurisdictional prerequisite. If the doctrine of stare decisis yields to a declaration, the effect of creating in it a precedent when such declaration is unsupported by the required statutory procedure with respect to necessary parties, then no necessity arises for any particular person to be made a party. All that is necessary is for the court to speak. Let us remember that this remedy is the creature of the statute and of the statute only. I am unable to concur in the thought that we may disregard the mandate of the statute as to making all persons parties who have interests affected by the declaration and, in lieu thereof, call to our aid the well-known doctrine of stare decisis and thereby breathe the breath of life and the power of a precedent into a declaratory judgment or decree.

In saying this, I am aware that the difference in my view and that of the majority is that I think that

taxpayers have interests which are affected by a declaration to the effect that a law is valid which imposes additional taxes for them to pay, while the majority opinion, as I understand it, holds that such taxpayers' interests are not thereby affected. If I am in error in this regard, the only other alternative is that the majority opinion holds that the taxpayers have interests which are thus affected, but, for some reason not stated, persons with interests so affected need not be made parties even though the statute expressly requires it. I cannot entertain either of these alternatives.

In my opinion, the learned circuit judge was right when he sustained the demurrer herein and dismissed the suit.

BELT, J., concurs in the dissent.