Argued May 23, affirmed June 25, 1973

PUTNAM, *Appellant, v.* MILNE ᴇᴛ ᴀʟ
(No. 72-99L), *Respondents.*
511 P2d 442

*Max Merrill,* Bend, argued the cause and filed the brief for appellant.

*James J. Spindor,* District Attorney, Klamath Falls, argued the cause and filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

This is an appeal from a judgment ruling that an

election to determine if Klamath County should establish a county board of health was valid.

ORS 431.412 (1) provides:

"The governing body of any county shall establish a county board of health, when authorized so to do by a majority of voters of the county at any general or special election * * *."

The election was held on May 23, 1972, the date of the state-wide primary election (ORS 249.340). The question was presented on the ballot as ballot measure No. 8:

"PROPOSED BY REFERENDUM PETITION

8 "SHALL THE COUNTY COMMISSIONERS ESTABLISH A COUNTY BOARD OF HEALTH AS PROVIDED IN ORS 431.412. The county Board of Health is to be vested with all the powers and charged with all the duties that are vested in the State Board of Health. These powers and duties will consist primarily of supervision of all matters relating to the preservation of life and health of the people of the county."   YES ☐   NO ☐

The measure was passed by a vote of 8,723 "yes" and 5,472 "no."

Contestant Putnam filed a petition contesting the election pursuant to ORS 251.015 to 251.090.

ORS 251.025 (1) provides:

"* * * [T]he approval or rejection of any measure at any primary, general or special election may be contested as provided in ORS 251.015 to 251.090 by any elector entitled to vote for such

\* \* \* measure at such election \* \* \* for any of the following causes and no other:

"(1) Deliberate and material violation of any provision of the election laws in connection with such \* \* \* approval or rejection."

ORS 251.080 (1) and (5) provide:

"(1) Upon the conclusion of the contest proceeding hearing under ORS 251.070, the circuit court shall render a judgment affirming or setting aside the \* \* \* approval or rejection of the measure."

"(5) A measure shall not be declared either approved or rejected for any cause under subsection (1) of ORS 251.025 unless it appears that the violation was capable of affecting the result of the election."

Contestant alleged that deliberate and material violations of the election laws, which were capable of affecting and did affect the outcome of the election, occurred in the submission of this measure to the people. The violations alleged basically were in two categories. The first relates to the method and procedures by which the measure was placed on the ballot. The second involves various allegations of violations relating to the publishing of a sample ballot and the heading of the measure that was placed on the ballot, i.e., "PROPOSED BY REFERENDUM PETITION."

On February 3, 1972 contestee Bateman filed a preliminary petition pursuant to ORS ch 254 for a county board of health proposal with contestee Milne, the county clerk of Klamath County. The preliminary petition was labeled a petition for initiative to place the question of whether the county commissioners should be authorized to establish a county board of

health pursuant to ORS 431.412. The preliminary petition proposed that the measure be submitted on May 23, 1972. Apparently thereafter the county district attorney prepared a ballot title for the measure pursuant to ORS 254.060, 254.320; and petitions were circulated to obtain the required number of signatures. On March 14, 1972 the requisite number of signatures were filed and certified by the county clerk, Milne.

On that day the following order was signed by the county commissioners:

"This matter being brought before the County Commissioners by Wm. D. Milne, County Clerk and Director of Elections for Klamath County. Petitions have been circulated to establish a Board of Health and sufficient signatures have been certified by the County Clerk's Office to present this measure to the vote of the people.

"IT IS THEREFORE, HEREBY ORDERED that the electors of Klamath County should decide if a County Board of Health should be established.

"IT IS HEREBY ORDERED that a Special Election be held on the 23rd day of May, 1972 to determine if a County Board of Health should be established."

The county commissioners are also named as contestees in this proceeding.

The Oregon Constitution, Art IV, § 1 provides:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

"(2) (a) The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or re-

ject them at an election independently of the Legislative Assembly.

"\* \* \* \* \* \*

"(e) An initiative petition shall be filed not less than four months before the election at which the proposed law or amendment to the Constitution is to be voted upon.

"\* \* \* \* \* \*

"[(4)] (c) All elections on initiative and referendum measures shall be held at the regular general elections, unless otherwise ordered by the Legislative Assembly.

"\* \* \* \* \* \*

"(5) The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district \* \* \*."

The trial court concluded that the contestant had failed to prove by clear and convincing evidence that the violations alleged and found to have occurred were deliberate or capable of affecting the outcome of the election. The court concluded that the late filing of the petition, that is, late if it were to be voted on at the time of the primary election on May 23, 1972, was rendered immaterial by the order signed by the county commissioners and that the alleged irregularity in that order, as well as the other violations alleged, were not proven to be either deliberate or capable of affecting the outcome of the election.

Contestant assigns as error the court's holdings relating to (1) the burden of proof, (2) the finding that the violations were not capable of affecting the out-

come, (3) the finding that the violations were not "deliberate and material," and (4) the rejection of contestant's argument that the election was void because the proposal had never been validly placed on the ballot.

(1). Burden of proof.

■ In *Thornton v. Johnson,* 253 Or 342, 453 P2d 178, 454 P2d 647 (1969), the court held that in a proceeding contesting an election pursuant to ORS 251.-015 to 251.090 where contestant alleged violations of the Corrupt Practices Act, ORS ch 260, the violations must be proven by "clear and convincing evidence." Contestant would have us distinguish the case at bar from the above case on the ground the Corrupt Practices Act is not involved here. Even if we accept contestant's view that *Thornton v. Johnson,* supra, set the burden of proof with reference to the Corrupt Practices Act only, the reasoning of the court there is equally applicable to all election contests under ORS 251.015 to 251.090:

> "* * * The serious consequences visited upon the winning candidate and upon the electorate as a result of disqualification prompt us to construe the Act as imposing upon the contestant the burden of proving a violation of the Act by clear and convincing evidence. * * * In a private contest which can result in the disenfranchisement of those who voted for the contestee, the contestant should have the burden of proving his case by clear and convincing evidence." 253 Or at 348.

The trial court was correct in holding contestant to this burden of proof.

(2, 3). Were the violations alleged deliberate and material and capable of affecting the outcome of the election?

In his brief contestant does not argue that the violations listed as being in the second category above were erroneously found by the trial court not to be grounds for invalidating the election. He instead relies on arguing that the measure was improperly on the ballot and that this violation was capable of affecting the outcome of the election. While this contention will be discussed below, it is necessary to deal with one of the alleged second category violations as well.

■ In *Miles et al. v. Veatch et al.,* 189 Or 506, 220 P2d 511, 221 P2d 905 (1950), the court held that the failure of the ballot to indicate that a measure was proposed by initiative petition was not ground for overturning the result of an election because such a mistake "* * * cannot be said to have prevented a free and intelligent expression of the will of the electorate * * *." 189 Or at 532. This supports the trial court's conclusion that the possible error in the ballot heading, that is, "referendum" as distinguished from "initiative" petition or "referred to the people by the board of commissioners," was immaterial and incapable of affecting the outcome of the election.

(4). Was the measure validly on the ballot and, if not, is the election void?

Contestant's position is that the measure was placed on the ballot by initiative petition and as such the election is void because the petition was not filed on time and the election was held at a primary election, not the regular general election in November. Contestant also argues that the county board of commissioners does not have the authority to place an initiative measure on the primary election ballot.

(a). That the petition was filed late for the primary election is conceded by the contestees. (b). That an

initiative measure cannot be voted on at a primary election absent special authority from the legislature is a question that has not been squarely decided by the courts of this state. *See* 30 Op Atty Gen 252 (Or 1960-62). (c). Whether the county commissioners have the same authority as the legislature in this regard when an initiative measure is solely a county question is also undecided.

A question that also is undecided is whether, if we accept contestant's arguments on (b) and (c) above, are these errors, together with the error conceded in (a), subject to the requirement that they are grounds for avoiding the results of the election only if the standards of ORS 251.025 and 251.080 (5) are met.

Contestant argues that because the measure was filed late the voters did not have sufficient time to study the measure. Whether this is a factor capable of affecting the outcome of the election is questionable since, given more time for study, as many "no" votes may have switched to the "yes" column as vice versa.

■ The question that is basic to contestant's position is whether ORS 251.080 (5) is applicable at all to this situation. If contestant is bound by this standard the election results must stand because whether the election was erroneously held in May instead of November is an error that cannot be shown to be capable of affecting the outcome. And as noted above the fact that the voters had only 70 days to study the measure instead of 120 is in itself not a showing of a violation capable of affecting the outcome.

■■ The statutory language is clear that the results of an election may be contested on certain grounds

"and no other." ORS 251.025.① The grounds chosen for the contest by contestant are subject to the further restriction of ORS 251.080 (5). In light of the explicit statutory language we appear bound to hold that the contest is limited by the above requirements and therefore contestant cannot prevail even if he is correct on points (b) and (c) above.

■ A further reason for holding the election valid is that the county board of commissioners is authorized by ORS 431.412 to order this measure to be placed on the ballot at any "general or special election." Contestant's position is that the order signed should be viewed as an attempt to place an initiative measure on the ballot at an election other than the regular general election. The order specifically refers to the date of May 23, 1972 (which was the date of the primary election in 1972) as the date for the holding of a special election on the matter at hand. We have been shown no good reason why a special election cannot be held concurrently with any election, primary or general, that is generally held throughout the state. ORS 249.340, which ordains primary elections, designates them as "general primary election[s]." The order appears to be valid on its face and the fact that it mentions the initiative petition can be construed as evidence that here the commissioners are bowing to local political pressure to place a measure on the May

---

① We note that in Henderson v. City of Salem, 137 Or 541, 545, 1 P2d 128, 4 P2d 321 (1931), the court stated that the filing requirements for initiative measures are jurisdictional and any proceedings held after a late filing are void. Besides the fact that this case is dubious precedent because the cases relied on therein involved the question of whether a measure should be placed on the ballot and not whether an election was valid, we feel that the legislature specifically overruled the holding of *Henderson* when it enacted the present Election Contests Act.

ballot that the voters have themselves placed on the November ballot.

Further, ORS 203.200 states:

"The decisions of the county court made in the transaction of county business shall be reviewed only upon the writ of review provided by the civil procedure statutes."

ORS 203.240 (2) provides:

"When a county has established a board of county commissioners any reference in the statutes to the county court of that county shall be considered a reference to the board of county commissioners of the county."

This proceeding cannot be viewed as challenging the order of the county commissioners and therefore the election was validly on the ballot independently of the initiative petition.

Affirmed.